Board of Directors of Alfalfa Irrigation District v. Collins.

---

BOARD OF DIRECTORS OF ALFALFA IRRIGATION DISTRICT, APPELLEE, V. M. S. COLLINS ET AL., APPELLANTS.

FILED NOVEMBER 19, 1895.    No. 8060.

1. Constitutional Law.  The term "due process of law," as employed in section 3, article 1, of the constitution of this state, relates primarily to the remedy for wrongs to persons and property rather than to matters of substantive law.

2. ———: DISTRICT IRRIGATION LAW: BONDS: TAXATION.  The act approved March 26, 1895, known as the "District Irrigation Law," provides that when bonds are authorized by a vote of any irrigation district, application may be made to the district court of the county in which such district or part thereof is situated for an order confirming and approving the same.  At the time set for hearing, and after notice by publication to all concerned, any person interested in said district may appear and resist such application, and the court may examine into and determine all questions pertaining to the organization of the district as well as the regularity of the voting and issuing of such bonds.  Held, Not to contemplate the taking of property without due process of law, by means of taxation, within the prohibition of the state or federal constitution.

3. Irrigation Districts:  CORPORATIONS: OFFICERS.  Irrigation districts organized under our laws are public, rather than municipal corporations, and their officers are public agents of the state.

4. Statutes:  CONSTRUCTION: POWER OF COURTS.  While it is within the province of the judiciary to declare invalid acts evi-

dently not designed to subserve public interest, if the subject-matter of legislation be such that there is any doubt of its character, or if by any reasonable construction it can be held to be for the welfare of the public, the will of the legislature should prevail over any mere doubt of the court.

5. **Constitutionality of District Irrigation Law.** The district irrigation law does not conflict with the constitution by authorizing the taking of property for private use only.

6. **Taxation.** The power of taxation is an attribute of sovereignty having its source in the necessities of organized society, and the limits of its exercise depending, in the absence of express limitations upon such power, upon the exigencies of the public. That power has been committed by the people to the discretion of the legislature, and for an abuse of the trust thus imposed the remedy is by appeal to the people themselves in the manner prescribed by law.

7. ———: Validity of District Irrigation Law. The district irrigation law is not unconstitutional on the ground that the power thereby conferred upon districts to levy taxes is without limitation.

8. **Constitutionality of District Irrigation Law.** Nor does said act conflict with the constitution on the ground that the effect thereof is to confer legislative power upon county boards.

9. **Taxation.** The provision of section 1, article 9, of the constitution, for uniform taxation, relates to the revenue required for the general purposes of state and municipal government only, and has no application to taxes or assessments levied for local improvements.

10. **Corporations:** Seals. Corporations, both municipal and private, may, in the absence of limitations, express or implied, as an incident to their general corporate powers, adopt and use a common seal.

11. **Validity of Tax Deeds:** Treasurer's Seal. *Larson v. Dickey*, 39 Neb., 463, and *Dickey v. Paterson*, 45 Neb., 848, distinguished.

Appeal from the district court of Keith county. Heard below before Neville, J.

*T. Fulton Gantt* and *J. R. Brotherton*, for appellants, cited: Cooley, Constitutional Limitations [4th ed.], sec. 117;

Cooley, Taxation [1st ed.], 48; *Harvard v. St. Clair &
Monroe Levee & Drainage Co.*, 51 Ill., 130; *Cypress Pond
Draining Co. v. Hooper*, 2 Met. [Ky.], 350; *Bradley v. Fall-
brook Irrigation District*, 68 Fed. Rep., 948; *Clother v.
Maher*, 15 Neb., 6; *Larson v. Dickey*, 39 Neb., 463.

*G. W. Shields, contra*, cited: *Olmstead v. Camp*, 33 Conn.,
532; *Todd v. Austin*, 34 Conn., 84; *Gammell v. Potter*, 6
Ia., 548; *Venard v. Cross*, 8 Kan., 260; *Harding v. Funk*,
8 Kan., 315; *Holyoke v. Lyman*, 15 Wall. [U. S.], 507;
*Boston & Roxbury Mill Corporation v. Newman*, 12 Pick.
[Mass.], 477; *Hazen v. Essex Co.*, 12 Cush. [Mass.], 475;
*Miller v. Troost*, 14 Minn., 282; *Newcomb v. Smith*, 1 Chand.
[Wis.], 71; *Fisher v. Horicon Iron & Mfg. Co.*, 10 Wis.,
351*; *Dean v. Davis*, 51 Cal., 410; *People v. Reclamation
District*, 53 Cal., 347; *People v. Williams*, 56 Cal., 647;
*Hoke v. Perdue*, 62 Cal., 546; *People v. La Rue*, 67 Cal.,
527; *Dayton Gold & Silver Mining Co. v. Seawell*, 11 Nev.,
394; *Tide Water Co. v. Coster*, 18 N. J. Eq., 521; *In re
Drainage of Lands*, 35 N. J. Law, 497; *In re Commis-
sioners to Drain*, 39 N. J. Law, 434; *Talbot v. Hudson*,
16 Gray [Mass.], 423; *Rutherford v. Maynes*, 97 Pa. St.,
78; *Hagar v. Reclamation District*, 111 U. S., 701; *Mo-
bile County v. Kimball*, 102 U. S., 691; *Louisiana v. Pills-
bury*, 105 U. S., 278; *Turlock Irrigation District v. Will-
iams*, 18 Pac. Rep. [Cal.], 379; *Central Irrigation District
v. De Lappe*, 21 Pac. Rep. [Cal.], 825; *In re Bonds of Ma-
dera Irrigation District*, 28 Pac. Rep. [Cal.], 675; *Board
of Directors v. Peterson*, 29 Pac. Rep. [Wash.], 995; *Lux
v. Haggin*, 69 Cal., 255; *People v. Salomon*, 51 Ill., 50;
*Stockton & V. R. Co. v. City of Stockton*, 41 Cal., 147; *Wyne-
hamer v. People*, 13 N. Y., 378; *Wellington, Petitioner*, 16
Pick. [Mass.], 87; *Erie & N. E. R. Co. v. Casey*, 26 Pa. St.,
287; *Powell v. Commonwealth*, 114 Pa. St., 265; *Turner v.
Althaus*, 6 Neb., 54; *Jenal v. Green Island Draining Co.*,
12 Neb., 163; *Darst v. Griffin*, 31 Neb., 668; *Dakota

Board of Directors of Alfalfa Irrigation District v. Collins.

*County v. Cheney*, 22 Neb., 437; *Welton v. Dickson*, 38 Neb., 767; *In re House Roll No. 284*, 31 Neb., 506; *Brennan v. City of Weatherford*, 53 Tex., 330; *Porter v. Androscoggin & K. R. Co.*, 37 Me., 349; *Tenney v. East Warren Lumber Co.*, 43 N. H., 343.

POST, J.

This was a proceeding by the appellee before the district court for Keith county under the provisions of section 59 *et seq.* of the act approved March 26, 1895, known as the "District Irrigation Law," seeking a confirmation of steps resulting in the formation of the Alfalfa Irrigation District, and the issuance thereby of certain bonds intended to promote the general purposes of the act. The appellants, who are taxpayers within said district, filed an answer, to which more particular reference will hereafter be made, but which puts in issue substantially all the allegations of the petition. A decree having been entered in accordance with the prayer of the petition, the cause was removed into this court by appeal. The objections urged by the appellants in this court are substantially as follows:

1. The district irrigation law conflicts with section 1, article 3, of the constitution, (1) since it confers on county boards legislative powers in the creation of corporations; (2) because it authorizes the levy by irrigation districts of taxes upon real estate without limitation.

2. Said act conflicts with sections 3 and 21, article 1, of the constitution of this state, and with section 1 of the fourteenth amendment of the constitution of the United States, by authorizing the appropriation of the property of non-residents without due process of law.

3. It conflicts with the constitution of the United States, by authorizing the appropriation of private property without the owner's consent to a mere private use.

4. It violates section 1, article 9, of the constitution of this state, by providing a system of taxation which ex-

cludes from its operation all personal property within the several districts.

5. The bonds in question are invalid, for the reason that they are required to be attested by a seal, whereas the said act makes no provision for the procuring or use by such districts of an official seal.

6. Said district was not legally organized.

7. The issuance of said bonds was not authorized by the requisite vote, and the election mentioned in the petition was accordingly illegal and void.

The first, second, third, and fourth objections challenge the validity of the district irrigation law, and may, for convenience, be considered together. It should, as preliminary to an examination of the subject, be remarked that the act in question is in all essential features copied from the district irrigation law of California, in which state it had, by decisions hereafter cited, received a settled construction long before its adoption by us, and its enactment in this state must be construed as a legislative approval of the interpretation there given it. (*Clark v. Cambridge & Arapahoe Irrigation & Improvement Co.*, 45 Neb., 798; *Paxton & Hershey Irrigating Canal & Land Co. v. Farmers & Merchants Irrigation & Land Co.*, 45 Neb., 884.) It was held in the cases cited that the reclamation of the arid lands of the state is, in a constitutional sense, a public use, to promote which the legislature may authorize the acquiring, by condemnation, of the right of way over private property by irrigating companies. It is not necessary at this time to examine the grounds upon which those cases rest, as the doctrine there asserted is not assailed in the able argument of counsel for appellants. It is said, however, that the district irrigation law was not involved in those cases and that the principle by which they are controlled can have no application to the case at bar. Since we are unable to concede that proposition, an examination of the act mentioned, and some of the cases to which refer-

ence has been made, will not be out of place in this connection.

The act provides for the creation of irrigation districts comprising property susceptible of irrigation from the same source and by means of the same system of works. It requires a petition to be filed with the county board, signed by a majority of the resident freeholders, who are qualified electors, and who own a majority of the whole number of acres of land belonging to resident electors, particularly defining the boundaries of the proposed district. The county board may, on the final hearing of the petition, and after notice therof to all parties interested, define the boundaries, making such changes thereof as may be deemed proper, but including therein no lands which are not susceptible of irrigation by the same system. The question is then, at a special election, submitted to the electors of the proposed district who are also the owners of real estate therein. Upon the adoption of the proposition, a record thereof is to be filed in the office of the county clerk of each county in which any portion of the land included in said district is situated, and immediately thereafter the county board shall call a special election, at which there shall be chosen a treasurer, an assessor, and three directors. Provision is made for regular meetings of the directors, whose duty it is to manage and conduct the business and affairs of the district, to make and execute all necessary contracts, establish equitable by-laws, rules, and regulations for the distribution and use of water, and to perform all such acts as may be necessary to fully carry out the purposes of the act. Power is also conferred upon said board to acquire, by purchase or condemnation, all lands, waters, and other property necessary for canals, reservoirs, and aqueducts, and to take conveyances therefor. Provision is made for the issuing of the bonds of the district when authorized by a vote of a majority of the electors having the qualifications in said act prescribed, not exceeding the

estimated cost of ditches and other necessary improvements, and for the time and manner of payment thereof.  All real estate within the districts is to be listed and assessed by the district assessor, and the board of directors, after equalizing the assessment in the manner therein provided, is required to levy the taxes necessary to pay interest and principal of all bonds previously issued.   Upon the issuance of any bonds whether the same shall have been sold or not, the directors of the irrigation districts by which they were authorized may present to the district court of the county in which such district or part thereof is situated a petition praying that all proceedings relating to said bonds may be examined, approved, and confirmed.   Upon the hearing of such application, after notice to all persons interested, the court is authorized to examine into and determine the legality of, and approve all of, the proceedings relating to or which may affect the validity of said bonds.

The foregoing synopsis is necessarily incomplete, but it serves to illustrate the general scope and purpose of the measure under consideration.

The validity of this species of legislation was first called in question in *Turlock Irrigation District v. Williams,* 76 Cal., 360, in which it was held, under constitutional provisions substantially similar to ours, that the districts contemplated by the statute of that state are *quasi*-public corporations in the sense that the purpose of their organization is the general public benefit.   It is further said that it is not essential to the validity of taxes contemplated by said act "that the method of their assessments and their collection adopted must be assimilated to and follow exactly the mode provided in the constitution for the assessment and collection of taxes for general state purposes."   In *Central Irrigation District v. De Lappe,* 79 Cal., 351, the constitutionality of said act was again affirmed, and the rule asserted that proceedings for the formation of irrigation districts should be liberally construed in order to give effect

Board of Directors of Alfalfa Irrigation District v. Collins.

to the purpose of the law. In *Crall v. Poso Irrigation District,* 87 Cal., 140, the same doctrine was asserted. A proceeding like that before us, to establish the validity of bonds voted by an irrigation district, was declared to be an action *in rem*, and the decree therein entered was held a bar to a subsequent action to enjoin the issuing of said bonds on account of irregularity in the organization of the district. Like views are also expressed in the well considered case of *Modesto Irrigation District v. Tregea,* 88 Cal., 334. And in *Re Bonds of Madera Irrigation District,* 92 Cal., 296, almost every phase of the subject is again examined and the doctrine of the previous cases in that court reasserted without qualification.

We cannot, in this connection, forbear to quote at some length from the very able and convincing opinion of Harrison, J., in the case last cited, viz.: "It is contended that the act is unconstitutional for the reason that it is a delegation of the legislative power to create a corporation. If by this is meant that only the legislature can create such corporation, the answer is that the constitution prohibits such action. If it is meant that because the corporation is not 'created' until the voters of the district have accepted the terms of the act, the answer is, that such proceeding is in direct accord with the principles of the constitution. Having the power to create municipal corporations, but being prohibited from creating them by special law, the only mode in which such corporations could be created under a general law would be by some act on the part of the district or community seeking incorporation, indicative of its determination to accept its terms. As the constitution has not limited or prescribed the character of such general law, its character and details are within the discretionary power of the legislature. We know of no more appropriate mode of such indication than the affirmative vote of those who are to be affected by the acceptance of the terms of the act. * * * Inasmuch as there is no

restriction upon the power of the legislature to authorize
the formation of such corporations for any public purpose
whatever, and as when organized they are but mere agen-
cies of the state in local government, without any powers
except such as the legislature may confer upon them, and
are at all times subject to a revocation of such power, it
was evidently the purpose of the framers of the constitu-
tion to leave in the hands of the legislature full discretion
in reference to their organization.  *   *   *  In determin-
ing whether any particular measure is for the public ad-
vantage it is not necessary to show that the entire body of
the state is directly affected thereby, but it is sufficient that
that portion of the state within the district provided for by
the act shall be benefited thereby.  The state is made up
of its parts, and those parts have such a reciprocal influ-
ence upon each other that any advantage which accrues to
one of them is felt more or less by all of the others.  A
legislature that should refrain from all legislation that did
not equally affect all parts of the state would signally fail
in providing for the welfare of the public.  In a state as
diversified in character as is California it is impossible that
the same legislation should be applicable to each of its
parts.  Different provisions are as essential for those por-
tions whose physical characteristics are different as are
needed in the provisions which are made for the govern-
ment of town and country.  Those portions of the state
which are subject to overflow, and those which require
drainage, as well as those which for the purpose of devel-
opment require irrigation, fall equally within the purview
of the legislature, and its authority to legislate for the
benefit of the entire state, or for the individual district.
The power of the legislature to adapt its laws to the pe-
culiar wants of each of these districts rests upon the same
principle, viz., that it is acting for the public good in its
capacity as the representative of the entire state." The
reasoning here employed is reinforced by the later case of

*Middle Kittitas Irrigation District v. Peterson,* 29 Pac. Rep.
[Wash.], 995. It is, as has been observed, quite as appli-
cable to the provisions of our constitution, and leads irre-
sistibly to a conclusion in harmony with that announced in
the cases cited. The only case to which we have been re-
ferred as authority for the opposing view is *Bradley v.
Fallbrook Irrigation District,* 68 Fed. Rep., 948. It was
in that case held that the use contemplated by the Cali-
fornia statute, to which reference has been made, is, in no
proper sense of the term, a public one, and that said act
accordingly conflicts with the fourteenth amendment of the
United States constitution, prohibiting the several states
from depriving any person of life, liberty, or property
without due process of law. The opinion of the learned
circuit judge in that case, in so far as it arraigns the act
involved as a matter of legislative policy, may be accepted
as altogether sound, but that it is a sound interpretation of
the restrictive feature of the constitution of the United
States, or of this state, does not necessarily follow. While
all agree that the legislature cannot, without the consent of
the owner, appropriate private property to purposes which in
no way subserve public interests, the rule is quite as firmly
settled that the courts will not interfere by declaring acts
invalid simply because they may differ with the law-
making power respecting the wisdom or necessity thereof.
For if, by any reasonable construction, a designated use
may be held to be public in a constitutional sense, the will
of the legislature should prevail over any mere doubt of
the court. (*Paxton & Hershey Irrigating Canal & Land
Co. v. Farmers & Merchants Irrigation & Land Co., supra.*

We are aware that the subject under consideration has
by federal tribunals been likened to questions of commer-
cial law, depending for their solution, not upon the decisions
of a single state or tribunal, but upon general principles
common to all courts. As said in *Olcott v. Supervisors of
Fond du Lac County,* 16 Wall. [U. S.], 618, cited in sup-

port of the conclusion announced in *Bradley v. Fallbrook Irrigation District*, "The nature of taxation, what uses are public and what are private, and the extent of unrestricted legislative power are matters which, like questions of commercial law, no state court can conclusively determine. for us." We do not, however, understand the court, by what is there said, to call in question the rule by which mere doubts are resolved in favor of the judgment of the legislature. The prohibition against the taking of private property without due process of law is not peculiar to the national constitution, but is a part of the fundamental law of a majority, if not all, of the states. It is worthy of note, too, in this connection, that the foregoing rule was firmly established long prior to the adoption of the fourteenth amendment. (2 Kent's Commentaries, p. 340; *Beekman v. Saratoga & S. R. Co.*, 3 Paige Ch. [N. Y.], 73; *Coster v. Tide Water Co.*, 18 N. J. Eq., 54, 518, and cases cited.) The reasonable inference is that the restriction therein upon the powers of the states relating to private property was intended to harmonize the national bill of rights with the provisions of the several state constitutions, rather than to introduce a new and distinct principle or rule of construction. It is doubtful, indeed, if that enactment had the effect to enlarge the rights of property secured by the common law, since, as shown in *Davidson v. New Orleans*, 96 U. S., 97, the term "due process of law" means no more than the "law of the land," as employed in Magna Charta. (See, also, *Parsons v. Russell*, 11 Mich., 129; *Bonning v. Taylor*, 24 Pa. St., 292; *Greene v. Briggs*, 1 Curt. [U. S.], 311.)

In the opinion of Mr. Justice Miller in *Davidson v. New Orleans, supra*, is found an exceedingly comprehensive discussion of the subject, concluding as follows: "There is wisdom, we think, in the ascertaining of the intent. and application of such an important phrase in the federal constitution by the gradual process of judicial inclusion and

Board of Directors of Alfalfa Irrigation District v. Collins.

exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded. * * * As contributing to some extent to this mode of determining what class of cases do not fall within its provision, we lay down the following proposition as applicable to the case before us: That whenever, by the laws of a state, or by state authority, a tax, assessment, or servitude, or other burden, is imposed upon property for the public use, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." That case arose under the provisions of a statute of Louisiana authorizing the assessment of property within drainage districts for the purpose of reclaiming overflowed lands. Before such assessments could become effectual they are required to be filed in the proper court, and personal notice given all owners known and within reach of process, and service by publication as to such as are unknown or not within the jurisdiction of the court. An order of confirmation was denied by the lower court, which judgment was reversed on appeal to the supreme court of the state, and the judgment last mentioned was affirmed on error, by the supreme court of the United States. In *Pearson v. Yewdall*, 95 U. S., 294, it is said by Waite, C. J., referring to a Pennsylvania statute of the same general character: "In the act of the general assembly of Pennsylvania, now under consideration, ample provision is made for an inquiry as to damages before a competent court, and for a review of the proceedings of the court of original jurisdiction upon appeal to the highest court of the state. This is due process of law within the

Board of Directors of Alfalfa Irrigation District v. Collins.

meaning of that term as used in the federal constitution."
The question was again directly presented in *Hagar v. Reclamation District*, 111 U. S., 701, which arose under a
California statute for the reclamation, by districts, of swamp
and overflowed, salt, marsh, and tide lands by means of
assessments upon property thereby benefited, in which Mr.
Justice Field uses this language: "If property taken upon
an assessment, which can only be enforced in this way, be
not taken by due process of law, then, as said by Mr. Justice Miller in the New Orleans case, these words, as used in
the constitution, can have no definite meaning.   The numerous decisions cited by counsel, some of which are given
in the note, as to the necessity of notice, and of an opportunity of being heard, are all satisfied where a hearing in
court is thus allowed."    And the same doctrine is reasserted
and emphasized by Mr. Justice Gray in *Wurts v. Hoagland*, 114 U. S., 606. (See in this connection, also, *Spencer
v. Merchant*, 125 U. S., 345; *Paulsen v. City of Portland*,
149 U. S., 30; *Dean v. Davis*, 51 Cal., 410; *People v. Reclamation District*, 53 Cal., 348; *Turlock Irrigation District
v. Williams, Central Irrigation District v. De Lappe, In re
Bonds of Madera Irrigation District, supra*.)   It is said in
the case last cited that "his [the complainant's] property is
not taken from him without due process of law if he is allowed a hearing at any time before the lien of the assessment thereon becomes final;" citing *Gilmore v. Hentig*, 33
Kan., 170, *Davies v. City of Los Angeles*, 86 Cal., 37, and
*Hagar v. Reclamation District, supra*.  And in *Turlock
Irrigation District v. Williams* the court, referring to the
analogy between irrigating districts and districts organized
for the reclamation of swamp and overflowed lands, say:
"The one is intended to bring into cultivation and make
productive a large acreage of land which would otherwise
remain uncultivated and unproductive of any advantage
to the state, being useless, incapable of yielding any revenue of importance toward the support of the general pur-

poses of state government, by reason of too much water flowing over, or standing upon, or percolating through them. The other has for its main object the utilizing and improvement of vast tracts of arid and unfruitful soil, desert-like in character, much of it, which, if water in sufficient quantity can be conducted upon and applied to it, may be made to produce the same results as flow from the drainage of large bodies of swamp and overflowed lands."

The conclusions we reach from an examination of the foregoing authorities are, first, that the term "due process of law" relates primarily to the remedy or means of redress where property rights are invaded rather than to matters of substantive law, and that the provision of our statute for a hearing, upon notice, of all questions pertaining to the organization of irrigation districts and the imposition by them of taxes and assessments fully satisfies the requirements of the state and federal constitution; second, the end and purpose of said act is, in a constitutional sense, public, and, therefore, resting in the wisdom and discretion of the legislature. The reasoning, based upon the decision in *Bradley v. Fallbrook Irrigation District,* must accordingly be rejected.

The objection to said act on the ground that it authorizes the creation by county boards of municipal corporations in violation of section 1, article 3, of the constitution, is fully met by the California cases cited holding that irrigation districts are public and not, strictly speaking, municipal corporations, and that their officers are agents of the state.

To the proposition that the authority conferred upon irrigation districts to levy taxes without limitation upon the property within their boundaries, is an invasion of the provisions of the state constitution, it may be answered: First —That the power of taxation is an attribute of sovereignty having its source in the necessities of organized society. That power has, by the people, been committed to the discretion of the legislature, and the limits within which it

may be exercised depend, in the absence of express limita-
tion upon such power, upon the exigencies of the public,
and for an abuse of the trust thus imposed the remedy is
an appeal to the people themselves in the manner ordained
by the constitution.     Second—The power of taxation so
conferred is not, as counsel assume, unlimited, but is re-
stricted to revenue sufficient to meet the obligations volun-
tarily assumed by the taxpayers themselves.     Third—Al-
though ample provision is made for resisting the issuance
of bonds, by taxpayers and others interested, the record
contains no suggestion of an abuse in this instance of the
taxing power; nor does said act conflict with section 1, ar-
ticle 9, of the constitution, requiring taxation to be equal
and uniform; that provision relates to the revenue required
for the general purpose of government, state and munici-
pal, and has no application to taxes or assessments levied
for local improvements. (*City of Sterling v. Galt*, 117 Ill.,
11; *Davis v. City of Litchfield*, 145 Ill., 313; *Reinken v.
Fuehring*, 130 Ind., 382; *City of Chester v. Black*, 132 Pa.
St., 568; *City of St. Joseph v. Owen*, 110 Mo., 445; *City
of Denver v. Knowles*, 17 Colo., 204.)

The only other objection which calls for notice is that by
which the validity of the bonds is assailed on the ground
that the act under consideration does not expressly author-
ize the procuring of a seal by irrigation districts.     That
contention is based upon the ruling of this court in *Larson
v. Dickey*, 39 Neb., 463, and *Dickey v. Paterson*, 45 Neb.,
848, that inasmuch as no provision is made by law for
the use by county treasurers of an official seal, there exists
under the present revenue law no authority for the execu-
tion by them of valid tax deeds.     Our first impression, it
must be confessed, was strongly in favor of the soundness
of that argument; but upon reflection we are satisfied that
the cases cited rest upon principles entirely different from
that which must control in this.     By reference to *Larson
v. Dickey* it will be observed that the provision there under

consideration was section 127 of the revenue law (Compiled Statutes, ch. 77, art. 1), requiring tax deeds to be executed by the treasurer "under the official seal of his office," substantially in accordance with the form therein prescribed, and which concludes as follows: "Given under my hand and the seal of our court this ——— day of ———, A. D. 18—." It is shown in that case that the section mentioned was copied from section 221 of the revenue law of Illinois. By statute of that state the sale of lands for delinquent taxes was made under decree of the county court, a court of record, in a proceeding instituted by the county treasurer, the section above mentioned requiring all deeds therefor to be executed by the clerk under the seal of the court. What was there held, in effect, is that the history of section 127 emphasizes the oft-asserted rule that provisions intended to divest persons of title to property, in the exercise of the taxing power, should be strictly construed. The cause before us, on the other hand, involves the mere contractual obligation of the district named and not calling for the application of the strict rule of construction recognized in the cases mentioned. It may with safety be asserted that in the absence of limitation, express or implied, corporations, both private and municipal, may, as an incident to their general corporate powers, adopt and use a common seal. (1 Dillon, Municipal Corporations [4th ed.], sec. 190; 4 Thompson, Law of Corporations, secs. 5044, 5045; 1 Beach, Private Corporations, sec. 376.)

It follows that the decree of the district court is right and must be

AFFIRMED.