[Civil No. 2073.   Filed June 14, 1922.]

[207 Pac. 614.]

In the Matter of the Application of the AUXILIARY EASTERN CANAL IRRIGATION DISTRICT for a Determination as to the Validity of the First Series of Bonds of Said District. JOHN JOHNSON, Appellant, v. H. L. CHANDLER, FRANK H. PARKER and JOHN D. LOPER, as Constituting the Board of Directors of the AUXILIARY EASTERN CANAL IRRIGATION DISTRICT, Appellees.

1. WATERS AND WATERCOURSES—STATUTES FOR ORGANIZING IRRIGATION DISTRICTS HELD CONSTITUTIONAL.—Laws of Second Special Session of 1915, chapter 8, and Laws of 1921, chapter 149, providing for the organization of irrigation districts, are constitutional and valid.

2. CONSTITUTIONAL LAW — STATUTES FOR CREATING IRRIGATING DISTRICTS NOT UNCONSTITUTIONAL AS CONFERRING UPON A BOARD LEGISLATIVE POWERS IN THE CREATION OF CORPORATIONS.—Laws of Second Special Session of 1915, chapter 8, and Laws of 1921, chapter 149, providing for the organization of irrigation districts and giving the county board of supervisors power to hold elections concerning the organization of irrigation districts, are not

On right to take property by eminent domain for irrigation purposes, see notes in 1 Ann. Cas. 304; 4 Ann. Cas. 1174; 14 Ann. Cas. 905; 1 L. R. A. (N. S.) 208; 22 L. R. A. (N. S.) 262; 33 L. R. A. (N. S.) 807.

On right to exercise power of eminent domain for purposes of irrigating land of private owner, see notes in 1 Ann. Cas. 188; 9 A. L. R. 583.

unconstitutional as giving the board legislative powers in the creation of corporations.

3. TAXATION—STATUTES ORGANIZING IRRIGATION DISTRICTS HELD NOT UNCONSTITUTIONAL AS PERMITTING UNLIMITED LEVY OF TAXES ON REAL ESTATE.—Laws of Second Special Session of 1915, chapter 8, and Laws of 1921, chapter 149, providing for organization of irrigation districts and for the levy and collection of taxes for district purposes, are not unconstitutional as authorizing the levy of taxes upon real estate without limitation.

4. TAXATION—STATUTES CREATING IRRIGATION DISTRICTS NOT UNCONSTITUTIONAL AS PROVIDING SYSTEM OF TAXATION EXCLUDING FROM ITS OPERATION ALL PERSONAL PROPERTY.—Laws of Second Special Session of 1915, chapter 8, and Laws of 1921, chapter 149, providing for the organization of irrigation districts and for the levy of and collection of taxes for district purposes, are not invalid as providing a system of taxation which excludes from its operation all personal property within the district contrary to Constitution, article 9, section 1.

5. TAXATION — STATUTE FOR ORGANIZING IRRIGATION DISTRICTS NOT UNCONSTITUTIONAL AS AUTHORIZING A LEVY OF TAXES WHICH IS NOT UNIFORM.—Laws of Second Special Session of 1915, chapter 8, and Laws of 1921, chapter 149, providing for the organization of irrigation districts and levying and collecting taxes for district purposes, are not unconstitutional as authorizing the levy in the district of taxes which are not uniform, contrary to Constitution, article 9, section 1.

6. EMINENT DOMAIN—STATUTES FOR ORGANIZING IRRIGATION DISTRICTS AND TAXATION BY DISTRICT NOT UNCONSTITUTIONAL AS AUTHORIZING APPROPRIATION OF PRIVATE PROPERTY TO PRIVATE USE.—Laws of Second Special Session of 1915, chapter 8, and Laws of 1921, chapter 149, providing for the organization of irrigation districts and for taxation for district purposes are not unconstitutional as authorizing the appropriation of private property without the owner's consent to a private use.

7. CONSTITUTIONAL LAW—STATUTES FOR ORGANIZING IRRIGATION DISTRICTS AND TAXATION BY DISTRICT NOT UNCONSTITUTIONAL AS AUTHORIZING APPROPRIATION OF PROPERTY OF NONRESIDENTS WITHOUT DUE PROCESS OF LAW.—Laws of Second Special Session of 1915, chapter 8, and Laws of 1921, chapter 149, providing for the organization of irrigation districts, and taxation by districts, are not unconstitutional as authorizing the appropriation of the property of nonresidents without due process of law, contrary to Constitution of the United States, Amendment 14, section 1.

8. WATERS AND WATERCOURSES—IRRIGATION DISTRICT HELD TO HAVE POWER TO BUY SHARE IN DAM.—Under Laws of 1921, chapter 149, section 12, authorizing an irrigation district to sell its bonds

to raise money for the purpose for which they were voted, section 5, giving the board of directors power to purchase or acquire water rights, real estate, personal property, etc., to use in irrigation, and section 11, making it the duty of such a district when organized to adopt some general plan of irrigation, where one of the purposes for which bonds were voted was to construct and install a pumping plant or to acquire an interest in such a plant, the board has power to purchase a power site and water rights to build a dam in order to carry out the scheme of irrigation.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. Fred Blair Townsend, for Appellant.

Mr. Richard E. Sloan and Mr. Arthur E. Price, for Appellees.

ROSS, C. J.—The statement of the case by the appellant, and his assignments of error, are as follows:

"This is a proceeding brought by the board of directors of the Auxiliary Eastern Canal Irrigation District under the provisions of section 28 of chapter 149, Laws of 1921, to obtain a judicial determination as to the legality of the organization of the district and the regularity and legality of the proceedings of the board of directors of said district providing for and authorizing the issue and sale of the first series of $2,000,000 of 7 per cent bonds of said district.

"An answer was filed to the petition by John Johnson, appellant herein, which raised the issue, as provided in the said act, by general demurrer, first, as to the constitutionality of the act known as chapter 8, Laws of 1915, under which the district was organized, and of the act approved March 19, 1921, under which the proceedings for the issue of said bonds were had; and, second, as to the regularity of the proceedings relating to the issue of said bonds.

"The respondent also raised, by way of answer, an issue as to the authority of the board of directors of the district to enter into a contract with the Salt

River Valley Water Users' Association under which certain of the proceeds of the sale of said bonds is proposed to be used in the acquisition of certain power rights.

"The petition set forth *in extenso* the various proceedings leading to the organization of the district and to the proceedings leading to the issue of said bonds by the district. The pleading of John Johnson also set forth the facts relating to the proposed contract with the Salt River Valley Water Users' Association. The facts so set forth were admitted by the petitioners in a reply made to the answer filed by respondent.

"The court heard the case upon the agreement and stipulation of counsel that the facts as contained in the petition and in the answer of John Johnson were true and correct and upon certain documentary evidence as to the powers of the Salt River Valley Water Users' Association with relation to the proposed contract.

"The trial court entered its judgment based upon findings of fact and conclusions of law.

"First, sustaining the constitutionality of the acts above mentioned;

"Second, affirming and approving the proceedings of the district with respect to the issue of said bonds and confirming and approving the legality of said bonds; and

"Third, confirming the authority of the district and of the Salt River Valley Water Users' Association to enter into the contract above mentioned.

"From this judgment the respondent John Johnson has appealed to this court.

"Assignments of Error.

"I.    The court erred in holding that the act known as chapter 8 of the Laws of 1915, Second Special Session, is constitutional and a valid act of the Legislature:

"First, because the act attempts to create a class of public corporations not authorized by the Constitution of the state.

"Second, because said act confers upon the board of supervisors of a county legislative powers in the creation of corporations;

"Third, because it authorizes the levy by irrigation districts of taxes upon real estate without limitation;

"Fourth, because it violates the provisions of section 1 of article 9 of the Constitution of the state by providing a system of taxation which excludes from its operation all personal property within the district;

"Fifth, because it violates the provisions of section 1 of article 9 of the state Constitution in that the taxes authorized to be levied in the district are not uniform;

"Sixth, because said act conflicts with the Constitution of the United States by authorizing the appropriation of private property, without the owner's consent, to a mere private use;

"Seventh, because it conflicts with section 1 of the Fourteenth Amendment of the Constitution of the United States by authorizing the appropriation of the property of nonresidents without due process of law.

"II.   The court erred in holding that chapter 149 of the Laws of 1921, being the act approved March 19, 1921, is constitutional and a valid act of the Legislature of the state of Arizona, for the reasons enumerated and set forth in the foregoing assignment.

"III.   The court erred in entering its judgment and decree in that the findings of the court do not sustain said judgment:

"First, because the facts found do not sustain the conclusion of law that the district was duly and regularly organized;

"Second, in that they do not sustain the conclusion of law that the proceedings with respect to the issuance of bonds were regular and in accordance with law;

"Third, that the facts found do not sustain the conclusion of law that the board of directors of the district has authority to enter into the proposed contract with the Salt River Valley Water Users' Association because the contract proposed does not contemplate the ownership by the district of the works for the construction of which the contribution is to be made by the district under its terms."

There is no controversy whatever about the facts, or that the proceedings in the organization of Auxiliary Eastern Canal Irrigation District and the

proceedings concerning the proposed bond issue were entirely regular and in exact conformity with the statute, the only questions presented for our consideration being questions involving the constitutionality of chapters 8 and 149 referred to in the statement of facts, as applied to those facts. It may be stated preliminarily that all of the Pacific Coast states, and two states of the middle west (Nebraska and Kansas), have enacted laws providing for the organization of irrigation districts for the purpose of reclaiming their arid lands. The pioneer in such legislation was California, when in 1887 it enacted what is known as the Wright Irrigation Law. Other states adopting similar laws are Idaho, Oregon, Utah, Colorado, Nevada, Washington, Montana, Kansas and Nebraska. The enactments by the legislature of Arizona, in 1915 and in 1921, as we understand, are in all essential features like the Wright Law as amended from time to time, and the laws of the other named states. In fact, it is certain such laws were used as a guide in the drafting of ours. We are fortunate in that respect, as the Wright Law and its prototypes have many times been before the highest courts of the states adopting it, and once before the Supreme Court of the United States, and in all of these courts the law has been upheld as constitutional. We are cited to no case, and in our research we have found none, taking a contrary view, except the case of *Bradley* v. *Fallbrook Irr. Dist.* (C. C.), 68 Fed. 948, which later, upon appeal to the Supreme Court of the United States, was reversed in 164 U. S. 112, 41 L. Ed. 369, 17 Sup. Ct. Rep. 56 (see, also, Rose's U. S. Notes). So that it may be truthfully said that the courts, national and state, where the Wright Irrigation Law, and others of a similar character, have been brought into review, have all been in accord in upholding the power of the legislature to enact such laws. We will not undertake to discuss each of the assignments separately

and indicate our rulings thereon, but suffice it to say that all of the objections raised herein, by the appellant, have many times been presented and passed upon by the courts of the states having the Wright Act, or acts similar thereto, and we shall content ourselves by stating in the language of Kinney on Irrigation and Water Rights, volume 3, section 1406, the objections made to the act and the rulings of the courts thereon:

"It was therefore contended that the statute, in violation of the Constitution of the United States and of the state, attempted to authorize the assessment and the taking of private property for a private use, and that a district formed under the act was a private and not a public corporation.   It has been repeatedly held by the courts that this contention was not well taken, and that: 'The formation of one of these districts amounts to the creation of a public corporation, and their officers are public officers.'   It is therefore held by the courts that an irrigation district formed under these laws is a public corporation, and its object is the promotion of the general welfare, and the assessment of the property under the provisions of the law is not the 'taking' of property for a private, but for a public, use.   It therefore also follows that property may be taken by a district by virtue of the power of eminent domain.   It is also held that the fact that the use of the water under the law is limited to the landowner, and is not given to every resident of the district, does not prevent the use being public; but that land which can be beneficially used without irrigation may be so much improved by the use of it upon other lands in the district, that such land may be properly within a district, and assessed for its benefit as a public improvement, and such use of the water is a public use.

"It was also contended that the law was unconstitutional because it authorized the taking of private property without due process of law.   There were a number of phases of this branch of the question presented in the various cases, but the courts invariably held against them all, and held the law to be constitutional.   It being held that, whenever a state law im-

poses a tax, assessment, servitude, or other burden
upon property for a public use, either of the whole of
the state or a limited portion thereof, and such law
provides a mode of confirming or contesting such
charge in the ordinary courts of justice, with due
notice to the owner, the judgment in such proceedings
does not deprive the owner of his property without
due process of law. The adoption of a method of
assessment according to the value of all the real prop-
erty within a district, or an *ad valorem* method, for
the expenses of the improvements of the district, is
not the taking of property without due process of law.
Again, these district laws are not unconstitutional on
the ground that the power thereby conferred upon
districts to levy taxes is without limitation. And,
again, the fact that the statute makes no provision
for notice to the landowner that on a particular day
the board of directors will assess benefits to the lands
within the district will not render such statute uncon-
stitutional, upon the ground of taking property with-
out due process of law, where the statute does provide
for notice to be given of the proceedings to organize
such district, and notice for the hearing for the con-
firmation of the organization and the proceedings of
such district, at which hearing the court is required to
examine all proceedings for the organization of such
district including the assessment of benefits.

''That the law was unconstitutional was also urged,
upon the ground that it was a delegation to others of
the legislative power to create a public corporation.
But, as said in the Fallbrook case: 'We do not think
that there is any validity to the argument. The
legislature delegates no power. It enacts conditions
upon the performance of which the corporation shall
be regarded as organized with the powers mentioned
and described in the act.' ''

The cases cited by the learned author sustaining
the propositions of law set forth are, among others:
*In re Madera Irr. Dist.,* 92 Cal. 298, 27 Am. St. Rep.
106, 14 L. R. A. 755, 28 Pac. 272; *Lincoln & Dawson
County Irr. Dist.* v. *McNeal,* 60 Neb. 613, 83 N. W.
847; *Board of Directors* v. *Collins,* 46 Neb. 411, 64
N. W. 1086; *Fallbrook Irr. Dis.* v. *Bradley, supra;*

*Imperial Water Co. No.* 1 v. *The Board of Supervisors,* 162 Cal. 14, 120 Pac. 780; *O'Neill* v. *Yellowstone Irr. Dist.,* 44 Mont. 492, 121 Pac. 283; *People* v. *Cardiff Irr. Dist.,* 51 Cal. App. 307, 197 Pac. 384; *Turlock Irr. Dist.* v. *Williams,* 76 Cal. 360, 18 Pac. 379; *Anderson* v. *Grand Valley Irr. Dist.,* 35 Colo. 525, 85 Pac. 313; *Kinkade* v. *Witherop,* 29 Wash. 10, 69 Pac. 399; *Knowles* v. *New Sweden Irr. Dist.,* 16 Idaho, 217, 101 Pac. 81; *Lundberg* v. *Green River Irr. Dist.* (Utah), 119 Pac. 1039; *Herrett* v. *Warmsprings Irr. Dist.,* 86 Or. 343, 168 Pac. 609.   In the case of *Board of Directors* v. *Collins, supra,* practically the same objections were made to the Nebraska law as are made by the appellant here, and the court there summarized its rulings in the following language:

"The conclusions we reach from an examination of the foregoing authorities are, First, that the term 'due process of law' relates primarily to the remedy or means of redress where property rights are invaded rather than to matters of substantive law, and that the provision of our statute for a hearing, upon notice, of all questions pertaining to the organization of irrigation districts and the imposition by them of taxes and assessments fully satisfies the requirements of the state and federal Constitution; second, the end and purpose of said act is, in a constitutional sense, public, and, therefore, resting in the wisdom and discretion of the Legislature.   The reasoning based upon the decision in *Bradley* v. *Irrigation Dist.* (68 Fed. 948) must accordingly be rejected.

"The objection to said act on the ground that it authorizes the creation by county boards of municipal corporations in violation of section 3 of article 1 of the Constitution, is fully met by the California cases cited holding that irrigation districts are public and not, strictly speaking, municipal corporations, and that their officers are agents of the state.

"To the proposition that the authority conferred upon irrigation districts to levy taxes, without limitation upon the property within their boundaries, is an invasion of the provisions of the state Constitution, it may be answered: First—that the power of taxa-

tion is an attribute of sovereignty, having its source in the necessities of organized society. That power has, by the people, been committed to the discretion of the legislature, and the limits within which it may be exercised depend, in the absence of express limitation upon such power, upon the exigencies of the public, and for an abuse of the trust thus imposed the remedy is an appeal to the people themselves in the manner ordained by the Constitution. Second—the power of taxation so conferred is not, as counsel assume, unlimited, but is restricted to revenue sufficient to meet the obligations voluntarily assumed by the taxpayers themselves. Third—although ample provision is made for resisting the issuance of bonds, by taxpayers and others interested, the record contains no suggestion of an abuse in this instance of the taxing power; nor does said act conflict with section 1 of article 9 [our section 1, article 9] of the Constitution, requiring taxation to be equal and uniform. That provision relates to the revenue required for the general purpose of government, state and municipal, and has no application to taxes or assessments levied for local improvements.''

We are satisfied that the objections to chapter 8, Laws of 1915, and chapter 149, Laws of 1921, are without merit, and that the proceedings in the organization of Auxiliary Eastern Canal Irrigation District, from and including the petition for the organization thereof, and all other proceedings affecting the legality and validity of the proposed bond issue, were legal and valid and should be approved and affirmed.

Appellant's last assignment of error questions the validity of a proposed contract between the Auxiliary Eastern Canal Irrigation District and the Salt River Valley Water Users' Association, wherein and whereby the district is to acquire, by purchase and lease, from the Salt River Valley Water Users' Association, at a cost estimated at about $500,000, certain rights or easements, in a dam proposed to be built by the latter company at Mormon Flats on Salt River for the purpose of storing, for the district, flood and

surplus waters, and a hydroelectric plant in connection therewith, and in existing canals to be enlarged and improved by the district for carrying purposes, and for the installation of pumping plants for irrigation purposes. Section 12 of chapter 149 authorizes an irrigation district organized under the laws of the state to sell its bonds from time to time to raise money for the purposes for which they are voted. One of the purposes for which the series of bonds in question were voted, according to the court's finding, was—

"The construction and installation of a pumping plant on the Salt River, or elsewhere, or the acquisition of an interest in any such plant by which power for the operation of pumping plants and the furnishing of power for domestic purposes may be secured for the benefit of the lands included within the district."

Section 5 of chapter 149 provides that—

The board of directors of an irrigation district shall possess the power "to purchase or acquire, water rights, acquire or lease real estate and personal property, when necessary for its purposes, . . . to construct, acquire, purchase, any and all canals, ditches, reservoirs, reservoir sites, water, water rights, rights of way, or other property by it deemed necessary for the use of the district, and power to acquire the right to enlarge any ditch, canal or reservoir, already constructed or partially constructed; also power to provide for the construction, operation, leasing and control . . . and lease of electrical energy. . . . "

Section 11 of said act makes it the duty of an irrigation district when organized, to adopt some general plan for the purpose of procuring necessary irrigation water, water and water rights, developing electrical energy, and acquiring the necessary property in connection therewith, and otherwise carrying out the provisions of the act. The board of directors of the district, in pursuance of the authority given,

and the duty imposed by section 11, did adopt a general plan which provided for a large pumping plant, sufficient to divert at least 350 second-feet of water from one of the main canals of the Salt River Valley Water Users' Association into the distributing system of the district under and by virtue of the contract heretofore referred to between it and the Salt River Valley Water Users' Association, and also the construction and installation of power plants for the purpose of furnishing power for the operation of said pumping plant, and also provided for the furnishing of power to land owners within the district for pumping and domestic purposes, and also the construction of substations and transmission lines and the installation of motors for the operation of pumps for the purpose of developing the underground waters within the district.

From the findings of fact it appears that one, and perhaps the chief, source of water to irrigate the lands in the district, and the only source for electric power, is from the Salt and Verde Rivers, and that because of rights already acquired by, and vested in, the Salt River Valley Water Users' Association, in the waters of said rivers, and power sites thereon, it is necessary that the district, by mutual and satisfactory arrangements, with the Salt River Valley Water Users' Association, avail itself of the present and future equipment and facilities of the association, in order to obtain water and power for its purposes. This arrangement is incorporated into the general plans of the district and is so essential that without it the undertaking would most likely be a failure. We have no doubt but that the contractual arrangement is one the district, under the law, may legally make; it being necessary to effectually carry out the purposes for which the district was organized. Chapter 149 gives such authority and power to the district,

and we can think of no reason why it may not exercise the power so granted.

The judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.