[No. 4892.]

ANDERSON V. THE GRAND VALLEY IRRIGATION
DISTRICT ET AL.

1. **Water Rights—Irrigation Districts—Constitutional Law—
Title of Act.**

The irrigation district law of 1901 (Session Laws 1901, page 198) contains but one general subject and the first part of the opening clause of the title, to wit: "An act to provide for the organization and government of irrigation districts," is broad and comprehensive enough to include every provision of the act. The remainder of the title may be disregarded as surplusage.

2. **Same—Due Process of Law.**

The irrigation district law of 1901 (Session Laws 1901, page 198) is not subject to the constitutional objection that it deprives the owners of land included in the district of their property without due process of law.

3. **Practice in Civil Actions—Evidence—Constitutional Law.**

One who questions the constitutionality of a statute on the ground that the legislature did not observe the constitutional requirements in its passage must, by competent evidence, prove the fact or facts relied upon to defeat the law. The court will not consider admissions of parties or stipulations of counsel as to the contents of legislative journals, for the purpose of impeaching the validity of a statute.

*Appeal from the District Court of Mesa County.
Hon. Theron Stevens, Judge.*

This is a special proceeding instituted in the district court of Mesa county under the irrigation district law of 1901, found in Session Laws of that year at page 198. Its object, in the language of the statute, is to obtain a judicial examination, approval and confirmation of the proceedings of the irrigation district and its board of directors providing for and authorizing the issue and sale of its bonds. The

trial court approved all such proceedings and confirmed the validity of the bonds and the order for their sale, and its judgment is brought here for review by appellant, who appeared as a defendant below.

Considering the nature of the objections urged to the decree and the disposition that is made of them, it is well, at the outset, to summarize the substantive provisions of this act, as well as the remedial provisions under which this special proceeding is conducted. The act is modeled upon, and is substantially similar to the California "Wright Irrigation District Act" of 1887, as the same has been subsequently amended by the legislature of that state.

It provides that whenever a requisite number of the resident freeholders "owning lands in any district susceptible to one mode of irrigation from a common source and by the same system of works, desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act," which "shall have the powers conferred or that may hereafter be conferred by law upon such irrigation district," provided that where already there exist proper and sufficient facilities for irrigating any lands within the proposed district, they shall be excluded from the operation of the statute, and the vested rights which the owners of such lands have theretofore acquired are not affected by it.

The method of procedure is by petition, filed with the board of county commissioners of the proper county, which shall describe the boundaries of the proposed district and pray for its organization. The petition must be published for at least two weeks before the time at which the same is to be presented, together with a notice stating such time. A hearing upon the petition to all persons interested at the des-

ignated time is enjoined upon the board, and upon final hearing such changes in the boundaries of the district as seem proper may be made, and the board shall thereupon proceed to establish and define the boundaries of the district; but in doing so, no land shall be exempted therefrom which is susceptible of irrigation by the same. system of works applicable to other lands of the district, or included therein, which, in the judgment of the board, will not be benefited by irrigation by the contemplated system, and in no case shall any lands be held by any district or taxed for irrigation purposes which cannot, from any natural cause, be irrigated thereby. There are provisions whereby, on application of the owner, other lands than those originally sought to be included in the district may be taken in. There are also specific provisions for the election by the qualified electors of three directors and a treasurer of the district, which election is under the direction and control of the board of county commissioners, due notice of which must be given, and proper safeguards and ample regulations are made for conducting the election, making the canvass of the vote, and the induction into office of those elected. The powers and duties of these district officers are prescribed, and times and places for their regular meetings designated, and directions for all future elections made.

Among the powers conferred upon the district board is that to construct, purchase and condemn canals, reservoirs, water rights, and to acquire such other property as may be necessary for carrying. out the provisions of the act. The manner in which. such general power is to be exercised is not material here. It is sufficient to say that it is amply guarded with a view to the protection of the interests of those upon whom the burdens of the act are devolved. The use of all property, including water rights, acquired

and necessary for the irrigation of the lands of any district so formed, is declared to be a public use and subject to the regulation and control by the state in the manner prescribed by law, and the title to such property is immediately vested by operation of law in the irrigation district in its corporate name, to be held by such district in trust for, and is dedicated and set apart to, the uses and purposes set forth in the act.

Provision is made for issuing negotiable bonds of the district for the purpose of paying for property acquired by it in carrying out the scheme devised, the payment of which bonds and interest thereon, as well as the ordinary current expenses in conducting the corporate enterprise, is to be made out of revenues derived from an annual assessment upon the real property of the district. The county assessor must assess and enter upon his records the assessment of all real estate, exclusive of improvements, situate in any irrigation district, and after the same has been duly equalized and extended as provided by law, make a return of the amount thereof to the board of county commissioners of the appropriate county. Upon the receipt from the assessor of the returns of the total assessment, and of the certificate of the board of directors certifying the amount of money required to be raised for the payment of bonds and expenses, it is made the duty of the board of county commissioners to fix the rate of levy necessary to provide the required sum. The county treasurer of the appropriate county is made the collector of this revenue, and, by section 20 of the act, the revenue laws of the state for the assessment, levying and collecting of taxes on real estate for county purposes are made applicable to the assessment, levy and collection of taxes under this particular act, except as thereby modified.

Changes in the boundaries of the districts and the exclusion of lands therefrom and inclusion of lands therein, and provisions for the dismemberment or dissolution of the districts, are made which, however, are not now of material concern.    The water which the district is authorized to acquire for purposes of irrigation of its included lands must be apportioned ratably to each landowner upon the basis of the ratio which the number of acres susceptible of irrigation last assessed to such owner for district purposes within the district bears to the whole number of acres susceptible of irrigation within the district, and the water right so apportioned shall attach to, and follow, the tract of land held in freehold to which it is so apportioned, either under lease or sale; and, in case the volume of water at the disposal of the district is not sufficient to supply the continual wants of the entire district, provision is made for a just and equitable apportionment thereof by the board of directors to the consumers, with due regard to the legal and equitable rights of all.

The remedial portions of the act under which this proceeding was instituted begin with section 55. In substance they are, that the board of directors of any district organized under the act may commence special proceedings in the appropriate court, by which there may be examined the proceedings of the district and its board providing for and authorizing the issuing and sale of its bonds, whether the bonds, or any of them, have, or have not, been sold, in order to secure a decree of the court approving and confirming all such acts as, in any wise, affect the validity of the organization and the legality of the bonds, and, if found regular and in conformity with the law, a decree of approval and confirmation is to be rendered.    When this petition is filed, the court fixes a time for hearing the petition, and orders the

clerk to give and publish a notice which shall state the time and place fixed for the hearing in which notice the petition must be referred to, or described, in such way as to give due notice of its contents and state the nature of the decree asked for. Any landowner or other person interested in the district may appear and demur to, or answer, the petition, which, unless controverted, shall be taken as true, and all persons affected by the proceeding who fail to appear or answer the petition shall be deemed to have admitted as true its material averments. A hearing is then had upon the issues, if any, thus joined, and upon the court is expressly conferred jurisdiction to make the examination and determination already outlined.

Mr. CHARLES F. CASWELL and Mr. E. W. SMITH, for appellant.

Mr. J. C. HELM and Messrs. CARNAHAN & VAN HOOREBEKE, for appellees.

Mr. JUSTICE CAMPBELL (after the preceding statement) delivered the opinion of the court:

The foregoing summary of the law, though omitting many details, is sufficient for our present purpose. The chief objections which the appellant landowner, who appeared below to defeat the object of the proceeding, urges upon this appeal to the decree of confirmation are constitutional in character. Apparently the board of directors of the district has strictly complied with—at least, there is no contention that it has disregarded—the procedure which the act of 1901 prescribes for the organization of the district, and has properly taken the various subsequent steps thereunder, up to and including the issuance and order of sale of the bonds. Bonds to the amount of $585,000 were issued and ordered sold by

the district board, but, as no proposal for the purchase was made, in order to facilitate their sale this proceeding for confirmation was brought. In view of the observation of the courts in the Nebraska case and Kinkade case from Washington, in *Tulare I. Dist. v. Shepard, infra,* and in *Tregea v. Modesta I. Dist. infra,* and *Miller v. Perris I. Dist.,* 85 Fed. Rep. 693, with respect to this special proceeding, it is pertinent to say that we are not defining the scope and effect of, or specifying the persons who are bound by, the confirmatory decree rendered herein. Necessarily we pass upon the objections to the decree which appellant interposes, only so far as they bear upon the propositions whether the proceedings had for the organization of the district and the issuance of bonds thereby after the organization, are, or are not, in harmony with the constitutional and statutory provisions which they are said to violate. That is, and obviously must be, the extent of our present holding, for anything beyond that would be mere *dictum.*

The errors assigned may thus be stated: (1) The act contains various provisions which are not embraced in the title; thereby is violated section 21 of article V of our constitution, which is that no bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title; (2) that the necessary effect of the act is to deprive the owners of land included in the district of their property without due process of law; (3) that the trial court erred in holding that in issuing bonds the board of directors of the district properly proceeded in accordance with the methods prescribed in the act of 1901, instead of conforming to the essentially different amendatory act of 1903, found in the Session Laws of that year at page 265.

1.   Colorado is properly classed among the arid states of the West.   Large tracts of land within its boundaries are not at present cultivable.   They can be made fully productive only by irrigation.   The conditions are much the same here as in the state of California, and the other arid regions.   The object of this act, as even a casual reading shows, is compulsorily to provide means, at the expense of those landowners within the proposed district primarily benefited, for bringing into cultivation the arid lands of the state and making them highly productive by the process of irrigation.   The general and sole subject of the act concerns the organization of irrigation districts.   The title is cumbersome, involved and unnecessarily prolix.   The opening clause reads: "An act to provide for the organization and government of irrigation districts and to provide for the construction of canals and reservoirs and the acquiring of canals already constructed or partly constructed."   The first part of the clause, viz: "An act to provide for the organization and government of irrigation districts," is broad and comprehensive enough to include every provision found therein.   The remainder may be entirely disregarded as surplusage, and what is left covers every provision which the body of the act embraces.   Every part of the act, including that for this proceeding, is strictly germane to the one general subject.   The constitutional provision upon this subject must have, as this court has repeatedly announced, a reasonable construction.   This act contains only one general subject, and that concerns irrigation districts, and this is clearly expressed in the title.   While the general assembly is again cautioned about attempting to make of the title a general index, still we are of opinion that this constitutional provision has not been violated in this instance.

2. The so-called Wright act, which, in all substantial particulars, is the same as the one now under consideration, has repeatedly been construed and upheld by the supreme court of California and the supreme court of the United States in the following, among other cases that might be cited: *Irrigation District v. Williams,* 76 Cal. 360; *Irrigation District v. De Lappe,* 79 Cal. 351; *Board of Directors v. Tregea,* 88 Cal. 334; *In re Modera Irr. Dist.,* 92 Cal. 296; *In re Central Irr. Dist.,* 117 Cal. 382; *Merchants' Bank v. Irr. Dist.,* 144 Cal. 329; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112; *Tregea v. Modesta Irr. Dist.,* 164 U. S. 179; *Tulare Irr. Dist. v. Shepard,* 185 U. S. 1.

The supreme court of Washington in *Board of Directors v. Peterson,* 4 Wash. 147, and *Kinkade v. Witherop,* 29 Wash. 10, reaches the same conclusion, and in *Board of Directors v. Collins,* 46 Neb. 411, the doctrine of the California cases is approved. It seems to us that all of the objections urged upon this hearing under the general head of "due process of law," so far, at least, as they affect the appellant, or are involved in or bear upon the issues raised in this special proceeding, have been met and sufficiently answered in the foregoing decisions, and to repeat the argument of the opinions would be a work of supererogation. Some of these decisions hold that the landowners, whose property is affected by the act, are thereby afforded a hearing, on due notice, upon the questions as to whether their lands shall be included in the district, and the correctness and validity of the tax or assessment which it authorizes to be laid upon the same, and, as those are the only questions upon which they are entitled to be heard, their property is not taken without due process of law; others declare that the special proceeding under which this cause is pending, being one to se-

cure evidence, does not result in the violation of any right protected by the state or federal constitution.

Counsel for appellant apparently concede that, were our constitution substantially the same as that of California, these decisions would be squarely against their contention; but they say that due process of law is ignored in this act under our constitution in that its material provisions are inconsistent with, and contravene, article XVI of our organic law, under which the right to the use of water for irrigation is the result of an appropriation and not of a grant, and that this article is further violated by our statute which expressly authorizes the acquisition or appropriation of a water right for a public use, because this court has repeatedly held that a water right can be acquired only for a private, and not for a public, use.

Just what bearing these constitutional provisions, even if they mean everything appellant claims for them, have upon this statute, is not made entirely clear to our minds by the argument of his counsel. Certainly, the act itself does not purport to be or to contain a grant to irrigation districts formed thereunder, of water, or right to its use, or of any other property except the franchises of a public corporation. Provision is made therein whereby irrigation districts, when organized, may acquire a right to use water by making an appropriation under the laws of the state, and also by purchase or condemnation thereof. This, however, is not equivalent to saying that by the act the state purports to grant property to public corporations for a public, which can be devoted only to a private, use. The property rights which are spoken of are such as are to be acquired by the districts after their formation, in accordance with constitutional and statutory methods by which water rights and other kinds of property

may be obtained by a public corporation. The use of the water which the act contemplates is thereby declared to be a public use, but, in one sense, the water rights are private property to be utilized for the benefit of individual landowners, and all the property acquired by the districts, including water rights, in equity belongs to them.

While we do not find in the constitution of California provisions like those in article XVI of our constitution, concerning irrigation, we are not advised, and our investigation has not disclosed, that there are such essential differences between the constitutions and laws of the two states with respect to water and water rights, or the methods of their acquisition, as would make such a law as that now under review contravene our constitution while in harmony with that of California. By this decree, which confirms the regularity, and shows conformity to the provisions of the act, in the proceedings of the district in its organization and in the subsequent proceedings of the district and its board in the issuance and order of sale of bonds, we think there is no infringement of any right of appellant which is protected by the state or federal constitution, both of which enjoin due process of law in the taking of private property. This conclusion, of course, is on the assumption that the procedure prescribed by the act of 1901 has not been changed by a later act.

3. It is admitted that the district board, in issuing the bonds, followed the directions applicable to that subject contained in the act of 1901, and entirely disregarded the kindred directions of the amendatory act of 1903, which materially differ from the former. Justification therefor by the board is that the law of 1903 is void because, in the passage of the bill through the senate, that branch of the general assembly disregarded a mandatory provision of the consti-

tution, compliance with which is essential to the validity of an act. The particular defect pointed out is that in the senate the bill was not read a third time or placed upon final passage, but, if so, the journal fails to show that the vote on final passage was taken by ayes and noes, and the names of those voting entered in the journal, which section 22 of article V expressly requires shall be done.

In *Marean v. Stanley,* 21 Colo. 43, this court decided that a party who seeks to question the validity of a statute upon the ground that either branch of the general assembly has not complied with some mandatory constitutional requirement in its passage must, in some proper way, present to the trial court the facts upon which he relies to show such non-compliance, and, if he desires to have the decision of that court reviewed, he must, by bill of exceptions, make such evidence a part of the record. *Zang v. Wyant,* 25 Colo. 551.; *Sargent v. La Plata County,* 21 Colo. 158; *Rice v. Carmichael,* 4 Colo. App. 84; and *Hill v. Bourkhard,* 5 Colo. App. 58, are to same effect. If the proceeding is an original one in the supreme court, the attacking party, of course, would be required to make proper proof of the impeaching facts. There was no decision in these cases how this fact is to be proved. But in *Peckham v. The People,* 32 Colo. 140, it was expressly said that it is not within the power of counsel to enter into a stipulation, the effect of which will render a law void, and the court will not consider admissions of parties or their counsel that a law has not been passed in accordance with the mandatory requirements of the constitution, or admissions of facts as to the contents of the legislative journals.

At the trial here counsel stipulated that the senate journals showed certain things, and nothing more, bearing on the passage of the bill through that

body which, if a proper way to prove facts, shows that, on final passage, the ayes and noes and the names of the senators voting were not entered on the journal. On this review it is only fair to say that counsel of both parties are willing to be bound by the stipulation, and do not question the propriety of thus bringing to the attention of the court the alleged facts which the senate journal is said to contain. But this is the sort of a question which the court will *sua sponte* raise, and will not tolerate a practice which allows counsel to disregard salutary rules of evidence in the manner of proving a fact on an issue concerning which, as in the case before us, the public, as well as private litigants, are so vitally interested.

Learned counsel for appellees vigorously attack the doctrine of the Marean and Peckham cases as unwarranted and against the weight of authority. Notwithstanding the ingenious argument, we are persuaded that, rightly understood, both of them are correct, and should be strictly adhered to. By section 13 of article V of our constitution, each house shall keep a journal of its proceedings, and may, in its discretion, from time to time, publish the same. It is not obligatory, however, upon either house to publish its journal. In the Marean case, it was held that the court will not, on the mere assertion of counsel that a statute is invalid because of non-compliance with some constitutional requirement in its passage, proceed to make an examination of the journals of the respective houses to ascertain how that fact may be. If counsel wishes the court to pass upon the issue, he may, if the journals are not published, present as evidence of their contents bearing on the point in issue, a proper certificate of the secretary of state, in whose legal custody they are; or, if published by proper authority, such portions of the

published journals themselves may be brought directly, and in that form, to the attention of the court. The court, however, will not make such investigation for itself.

The reason for the rule announced in the Peckham case, and the necessity for its observance, seem almost too obvious for argument. Of course, learned counsel in this case would not be guilty of any impropriety; but to permit parties to a suit to stipulate impeaching facts of this kind would be dangerous, and afford opportunities for falsifying, or suppressing parts of, the journals. It may be suggested that the possibility of this danger is too remote on which to ground a rule of evidence, but we do not think so. The safer course, in a matter of such importance to the state and to the public interests, is to require that proof of the impeaching facts should be made in the orderly way which experience has demonstrated to be attended with the least possibility of danger. As a practical question, where the legislative journals have not been published, it would be manifestly unfair and attended with great inconvenience to require trial judges holding court in counties remote from the capitol to examine the legislative journals upon the mere assertion of counsel that some mandatory provision had been disregarded by one or both branches of the general assembly, or to base their decisions on the agreement of parties as to the contents of the journals. In *State v. Boise,* 5 Idaho 519, the court said that it knew of no authority for recognizing the stipulation of counsel whereby it was agreed that certain writings therein contained constituted a copy of the journals of the house of representatives or senate of the state. We believe this to be a wholesome rule, and that the Marean and Peckham cases, *supra,* should both be approved.

It may be true that the stipulation of counsel correctly reproduces all that the senate journal contains relating to the passage of the bill in controversy through that body. But that method of proof, in a case of this sort, was condemned in a decision of this court which was published before the final hearing below was had. It is not insistence on an unimportant technical requirement, but the enforcement of a settled and salutary rule of evidence, that compels us, because of its violation, to reverse the judgment which was predicated solely, as to this branch of the case, on the forbidden agreement of parties.

Because the trial court was in error in resting its judgment that the act of 1903 was unconstitutional on the stipulation of counsel whereby, in effect, it was agreed by them that the mandatory constitutional requirements in the passage of the bill were ignored by the senate, the decree for that reason, and as to that point, must be reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion. In all other respects the decree is affirmed for the reasons given, and the matters so adjudicated and hereby affirmed will not be submitted for a rehearing.         *Reversed.*

Decision *en banc.*