[No. 6307.]

### THE STATE RAILROAD COMMISSION ET AL. V. THE PEOPLE EX REL.

1.   Office—Remedy for Usurpation—The provisions of chapter 27 of the code supersede the common-law proceeding of quo warranto, and provide the exclusive method, so far as the district court is concerned, for investigating the usurpation of a public office.—Pp. 348, 349.

The proceeding, like quo warranto, is for the protection of the interest of the public, and should not be allowed for the promotion of private rights.

Railroad companies will not, merely for the protection of their individual rights, upon their own relation, the district attorney having refused to act, be heard to assail the title of the members of the State Railroad Commission, upon the ground of the unconstitutionality of the statute under which they were appointed.—Pp. 351-354.

2.   Constitutional Law — Departments of Government — The judiciary have no power, by any form of action, legal or equitable, to control or interfere with an administrative board exercising discretionary powers, in advance of any action taken by such board.—Pp. 356, 358.

The rule applies to officers of both the legislative and executive departments.—P. 358.

*Error to Denver District Court.*
*Hon. Greeley W. Whitford, Judge.*

Hon. W. H. DICKSON, attorney general, and Mr. HORACE PHELPS, assistant attorney general, for plaintiffs in error.

Mr. A. N. CLARKE, Mr. E. E. WHITTED, Mr. K. C. SCHUYLER, Mr. CASS HERRINGTON, and Messrs. ROGERS, CUTHBERT & ELLIS, for defendants in error.

Mr. CHARLES D. HAYT, Mr. FRED R. WRIGHT, Mr. H. RIDDELL, *amici curiae.*

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The general assembly, at its sixteenth session, adopted, and the governor approved, an act to regulate common carriers, to create a state railroad commission, and prescribe and define its duties. A proviso to the first section excepts from the provisions of the act "mountain railroads operating less than twenty miles of road, the principal traffic of which is the hauling of mineral from, and supplies to, mines."

The eleventh section creates a commission to be known as the "state railroad commission," to which is given authority, and on which is imposed the duty, to inquire into the management of the business of all common carriers subject to the provisions of the act, and to execute and enforce the same; it has other powers not necessary here to mention, the exercise of which involves discretion and judgment, and after notice and a hearing on evidence, it may make orders which, in a certain contingency, become binding.—Sess. Laws 1907, pp. 531, 545.

In pursuance of the authority conferred upon the governor by the act, he appointed, as members of this commission, Frederick J. Chamberlin, Bulkeley Wells, and Halsted Ritter, who proceeded to organize and in all respects to comply with the provisions of the act whereby they became, as they claim, a duly and legally constituted state railroad commission for the purpose of exercising the powers and performing the duties which the statute devolved upon it.

After the commission organized, but before it had taken other action, the plaintiffs, railroad corporations organized and doing business as common carriers within this state—the district attorney, upon their demand, having refused to bring such an action upon his own relation—themselves as relators brought this action under the provisions of chapter

27 of the Code against the railroad commission and its members, to try their title to the office which the complaint says they have usurped and are unlawfully holding, and, as relief, prayed that they be ousted from such office and enjoined from exercising the duties thereof.

Before the cause was brought to an issue, certain other railroad corporations doing business as common carriers in this state, filed their petition of intervention containing averments similar to those in the complaint, and asked to be made plaintiffs in the action, and, against the objection of defendants, such permission was given by the court. They also asked for a temporary writ of injunction to restrain the commission from acting; but that feature, while it might be significant in its bearing on some question not here mooted, is not now important.

The sole ground upon which the original and intervening relators rely in support of their allegation that respondents have usurped a public office, is, that the proviso of section 1 above quoted renders the entire act absolutely void, in that it unjustly discriminates between common carriers, arbitrarily including some and excluding others of the same class, the plaintiffs being carriers who are included, and that thereby their rights under the state and federal constitutions have been violated.

To the original complaint respondents demurred, on the ground that relators have not the legal capacity to sue, and that the complaint does not state facts sufficient to constitute a cause of action. To the petition or complaint of intervention respondents demurred, for the same and other reasons. These demurrers were overruled by the court and, respondents electing to stand thereby, the court entered judgment upon the complaint and petition of intervention, ousting and excluding the individual

respondents from the office of railroad commissioner, and preventing them from acting as a railroad commission. From that judgment, respondents sued out this writ of error.

From the abstract of record, it does not appear that, after the refusal of the district attorney to bring an action, the plaintiffs asked leave of the district court, or that the court was asked or given an opportunity to grant leave to them to institute or prosecute this action. While, in the demurrer to the petition of intervention, but not to the original complaint, the question of the court's jurisdiction was raised and the right disputed of private persons, purely for the protection of their private rights, to maintain an action which primarily and properly is maintainable only by the state in its sovereign capacity and for the protection of the public interests, the attorney general, at the oral argument on this review, stated that he conceded below, and does here, that plaintiffs might properly maintain this action, and that the courts have jurisdiction to grant the particular relief prayed; in other words, that private individuals or corporations, solely for the protection of their own private rights, may, as relators, institute and maintain an action under chapter 27 of the Code, which, in all substantial respects, is like an information in the nature of *quo warranto* at common law, and have as relief a judgment which effectually prevents a state board, charged with such duties as are devolved upon the railroad commission by this act, from carrying out and enforcing the laws of the state; and that, too, in the first instance, and in advance of any action whatever by the board in any way injuriously affecting their private rights.

Under chapter 27 of the Code, the action for trying title to a public office or franchise "is a substitute for the original common-law *quo warranto*

remedy. It prescribes an enlarged proceeding, substantially by information in the nature of *quo warranto,* and furnishes the exclusive method, so far as district courts are concerned, for investigating usurpations of office."—*People ex rel. v. Londoner,* 13 Colo. 303, 314.

Section 1 of that chapter authorizes the district attorney, in the name of the people, upon his own information or upon the relation of a private party, to bring the action against any person who usurps any public office or franchise; and it is made the duty of the district attorney, whenever he has reason to believe that such office or franchise has been usurped, or when he is directed to do so by the governor; and, in case the district attorney refuses to bring the action on the complaint of a private party, such action may be brought by such private party upon his own relation in the name of the people. The act also provides that, in a statement of the cause of action by the district attorney, he may set forth in his complaint the name of the person rightly entitled to the office; and the court, in a proper case, may adjudicate his title thereto, as well as that of the incumbent. These provisions, however, which give permission to a private party to bring the action and also to have the right of one other than the incumbent adjudicated, do not turn the proceeding from one to protect the public interests into one to safeguard the purely private rights of the relator.

In the *Londoner case, supra,* the relator, Barton, and Londoner, respondent, were opposing candidates for Mayor of Denver, and, on the face of the returns, Londoner was declared elected. Barton, thereupon, as relator, brought an action under this chapter of the Code, to try Londoner's title, as well as his own, to the office, asserting in his complaint that the *prima facie* result of the election was brought about by the

commission of gross frauds upon the elective franchise. Barton was permitted to institute and maintain the action, and it is clear, from the opinion, that permission was granted because the public was directly interested in an investigation of the alleged frauds, the wrong done being an abuse of the elective franchise and detrimental to the general welfare. In the course of the opinion by Chief Justice Helm, which probably contains the fullest discussion upon the subject of *quo warranto* in our own reports, it was said, after discussing the nature of an election contest:

"*Quo warranto* proceedings, on the contrary, deal mainly with the right of the incumbent to the office, independent of the question who shall fill it. They are brought in the name and on behalf of the people, to determine whether the incumbent has unlawfully usurped or intruded into, or is unlawfully holding, the office. They are not, primarily, in the interest of any individual, but are intended to protect the public generally against the unlawful usurpation of offices and franchises. It is true that, in the absence of a contesting statute, the common-law remedy by information is invoked by contesting claimants, though the relief obtained is inadequate, because the proceeding stops with the ouster, the contestant not being seated.—2 Dill. Mun. Corp., 842-844. Such practice would be more readily adopted, under like circumstances, in this state, since the proceeding by information, made statutory, has been so enlarged as to permit the adjudication of the claimant's right to possession, as well as the incumbent's title.—Code, c. 28. But the public and prerogative function of this proceeding is still, under our information statute, its most important characteristic, and the trial of a contestant's claim is secondary and subordinate."

From this language, it clearly appears that the substituted remedy under our code, like *quo warranto* at the common law, is for the protection of the interests of the public as contradistinguished from the private rights of a relator; and that, when the object of a proceeding is the protection of the latter, the action should not be maintained.

A case exactly in point is *People ex rel. v. Colorado Eastern Ry. Co.*, 8 Col. App. 301. That was a proceeding in *quo warranto* under the same chapter of the Code, in which the complaint was signed by the district attorney. The facts were, that the Colorado Eastern Railway Company was seeking to condemn property belonging to the Union Pacific Railway Company, and the latter company, as relator, brought an action in *quo warranto* for the purpose of securing a dissolution of the corporate existence of the Colorado Eastern Railway Company, on the ground that the latter was unlawfully exercising a public franchise which it once h    possessed but had forfeited. Counsel upon both  .des united in presenting to the court for determination the matters in controversy, and did not question the jurisdiction of the court in the premises. The court, however, refused to determine these matters, and said:

"It is not a legitimate litigation which is prosecuted for the enforcement of public rights. According to our best judgment, it is a proceeding brought by the Union Pacific Railway Company against the defendant corporation to enforce private rights and redress private wrongs. This litigation is in our judgment wholly unnecessary to the protection of those rights or the redress of those grievances, and while we concede to the litigants the right to institute as many suits and to begin as many proceedings as may seem expedient or necessary to enforce their claims, we do not admit they may institute such

proceedings in the name of the people for any other than public purposes. We confess the question was not raised by the defendant company, but the consideration is so entirely persuasive and satisfactory we unhesitatingly rest our conclusions on that proposition  *  *  *  The complaint discloses no wrong done to the people, nor any act or proceeding by the Colorado Eastern Railway Company detrimental to the public welfare, or likely to occasion harm to the people as contradistinguished from the private relator  *  *  *  The thing complained of is the attempted condemnation of the Union Pacific company's lands for terminal facilities. This is not a matter in which the public are interested. It only concerns the Union Pacific Railway Company. This is a private wrong for which there is ample remedy obtainable in other suits and by different proceedings  *  *  *  In addition, it seems to be pretty generally held that these proceedings are always *quasi* public, prosecuted by law officers of the people, and only available to protect public interests as contradistinguished from private rights. As a rule, wherever it is discovered proceedings are brought for the latter purpose, they are never entertained, but the party is remitted to an action at law or suit in equity to redress his injuries.  *  *  *  There seems to be no dissent from the general position that in order to support an action by the people for the redress of a wrong, that wrong must appear to have been done to the people.''

The authorities cited in its opinion by our court of appeals abundantly sustain its position.

Our attention is called to *People v. Regents,* 24 Colo. 175, as authority for the right of a private relator to maintain *quo warranto* to protect his private rights. The case is not in point, and falls far short of being a precedent for the present action.

That was a proceeding in the nature of *quo warranto* at the instance of a private relator against the board of regents of the state university to exclude it from exercising a franchise which it had unlawfully usurped. The point was made by respondent, for the first time on appeal, that a private relator could not prosecute the action, because the wrong charged was done to the public and not to him; therefore, only the state in its sovereign capacity had authority to right such a wrong. The court gave several reasons why, under the facts of that case, the objection ought not to be sustained. The conclusive one was that the attorney general, by statute, is made the attorney of the board of regents, and in the supreme court has full charge of all actions running in the name of the people, including actions in *quo warranto*, and unless a private relator could maintain an action of that sort against the board of regents, a miscarriage of justice might result, greatly to the injury of the public.

There is another essential difference between *People v. Regents* and the case in hand. There the wrong charged was confessedly done to the public and the object was to protect public interests, not the rights of the relator. Here the wrong charged is not to the public, but solely to the private rights of the relators, and the avowed object is not to safeguard public interests, but to protect their private rights against acts of public officers done solely in the interests of the public.

Let us then apply the foregoing principles announced by the courts of this and other states to the facts of the case in hand. The plaintiffs here do not pretend that they have brought this action as public benefactors. They avowedly are in court for the protection of their own property rights. They make no claim that if the act is valid the individual re-

spondents are not legal incumbents of the office. There is no defect in their appointment and no other persons have made any claim to the office. Plaintiffs seek to oust respondents, not because the latter have taken any action or made any order that injures them, but because they fear that if respondents are permitted to hold office and exercise the duties thereof, as prescribed by this act, that some order which they may hereafter make will be injurious to plaintiffs. There is no allegation in the complaint that public interests will suffer if respondents exercise the duties of their office, or that the public welfare will be promoted by ousting them. The sole and the only reason which relators give for seeking to oust respondents, is to protect their purely private interests as contradistinguished from the rights of the people.

Primarily this remedy belongs to the state in its sovereign capacity to protect the interests of the people as a whole and guard the public welfare by ousting incumbents of office who wrongfully hold to the injury of the public. The district attorney or the attorney general, as the case may be, is the proper one to determine, in the first instance, when the interests of the public justify a resort to this remedy. The absurdity of permitting relators to maintain this action and the inconsistent attitude of the attorney general in conceding their right to do so, become at once apparent when it is considered that the attorney general himself, as the chief legal officer of the state, is here in the interests of the people to promote the public welfare by resisting the very claim which the plaintiffs make. If it is to the interest of the public that respondents be ousted and the statute under which they were appointed declared void, the attorney general should be here as the relator and not as representing respondents. If the object of the action

is what relators say it is, merely to protect their property interests, the attorney general should not concede their right to invoke as a remedy that which peculiarly belongs to the state and by means of which it rights wrongs done to the public but not to private parties.

For our present purpose we may assume that the law-making body of the state has declared that this act is a wholesome and salutary one; that it is in the interests of the people at large that common carriers shall be regulated and controlled by the state. It is made the duty of the attorney general, as the legal representative of the state, to uphold the constitutionality of legislative enactments when he believes them valid. And that is precisely the position he assumes here. His contention is that this act is valid and wise legislation. He must for himself determine, in the first instance, whether a public office or a franchise has been usurped, and whether the public welfare will be promoted by a proceeding to oust the usurper. It is likewise for him to determine whether, and to what extent, he will furnish to those attacking the constitutionality of an act facilities for rendering it abortive. But he cannot, nor can parties to a suit by agreement, prescribe the practice which the courts shall follow, or, by consent, confer upon them jurisdiction of a subject-matter which they do not, by the constitution or statutes, possess, even though either or both are impressed with the wisdom or feasibility of the method of procedure they have selected. In discharging the duty which the supreme law of the constitution has imposed on them, courts reserve to, and exercise for, themselves the power to determine such important questions.

Our conclusion is that this is not a proper case for the prosecution of a proceeding in the nature of

*quo warranto;* because it is conducted, not in the interests of the public, but by private relators to protect their own private interests.

In addition to the foregoing authorities and those cited in the *Londoner* and *Colorado Eastern* cases, see *The People v. Peoples' Gas Light Co.*, 205 Ill. 482; *Toncray v. Budge*, (Idaho) 95 Pac. Rep. 26; *The State v. A. T. & S. F. Ry. Co.*, 176 Mo. 687. The latter case is particularly in point that the proceeding under a similar statutory provision cannot be maintained where the object is solely for the vindication of private rights.

There is another substantial reason why this action cannot be maintained. . If the decision of this court in *People ex rel. Alexander v. District Court*, 29 Colo. 182, is to stand—and the parties here do not attack it, but on the contrary cite it in support of their present contention that the remedy here invoked is appropriate, and we, therefore, shall not reconsider it, but treat it as the law in this state—the district court was without jurisdiction to hear and determine this action. In that case the General Revenue Act of 1901, creating a state board of assessors, was involved. That portion of the act which created this body had been declared unconstitutional by the district court of Pueblo county, and afterwards the same court, by injunction, restrained the board from performing its official duty under the act. Thereupon the attorney general brought an original proceeding in the supreme court to prohibit the district court from enforcing the injunction. The temporary writ of prohibition was made permanent, and in the course of the opinion by Mr. Justice Steele, it was said:

"We are of opinion, also, that the acts to be performed by the board were not such as may be enjoined, and that the complaint presented to the

district court does not state facts requisite to give a court of equity jurisdiction to interfere by injunction."

Mr. Justice Gabbert read a concurring opinion in which he thought that the discussion had taken a wider range than necessary for a decision of the vital question involved; but he concurred in the conclusion, and said that since the state board of assessors was charged with executing laws governmental in their nature, that the judicial department of the state government does not have power by injunction to control, in the first instance and in advance of action, the executive department in the exercise of such functions.

In response to the argument that the jurisdiction of the district court to entertain the proceeding had not been challenged below and could not for the first time be raised in the supreme court, Mr. Justice Gabbert said that, while the ordinary rule was that a writ of prohibition would not be granted by this court unless the lower court had passed, or been given an opportunity to pass, upon its own jurisdiction, still, where the question was one, as there, *publici juris,* and the people were directly interested, this court, of its own motion, would raise and decide the jurisdictional question. A reading of the two opinions shows that the decision was, not that injunction was not the proper remedy and that the parties might, by some ordinary or extraordinary legal remedy, accomplish the result aimed at by the writ of injunction, but the conclusion was put squarely upon the proposition that in the first instance and in advance of action by an executive or administrative officer or board performing functions of a governmental nature, the judicial department, by any kind of action, legal or equitable, does not have jurisdiction to interfere with them. If that doctrine is sound, it neces-

sarily follows that the district court did not have jurisdiction in the pending action of private relators to protect private interests to oust respondents from office. Whether the commission is a part of the legislative or executive department is immaterial. The same rule applies to legislative and executive officers. Upon this railroad commission, of which respondents are members, the act imposes the duty of enforcing its provisions, and this duty calls for the exercise of judgment and discretion of a high order. While performance of such duties may not be indispensably necessary to the conduct of government in the sense that the exercise of the power of assessment and taxation is, yet the power which the commission possesses is administrative in its nature, and in some particulars perhaps *quasi* judicial, and calls for the exercise of judgment and discretion upon evidence and after a hearing.

In a late case, *C. B. & Q. R. R. Co. v. Winett et al.*, in which the opinion was filed April 17, 1908, the United States circuit court of appeals for the eighth circuit announced a similar doctrine. The state railway commission of Nebraska notified the railroad company that on a day in the future it would consider the question of fixing the rates on grain and grain products in straight carloads, transported between points in Nebraska, and that the rates contained in a schedule attached to the notice would be adopted with such changes and modifications as were deemed necessary, unless good and sufficient cause should be shown why they should not be. The only cause attempted to be shown by the railroad company was the filing in the circuit court on the next day after the day set for hearing before the commission, of a bill in equity, the only object of which, the court said, was perpetually to restrain the commission from even considering the question of establishing or fixing

such rates.   The circuit court sustained a demurrer
to the bill, which on the appeal was affirmed.   It does
not appear that the plaintiff attacked the constitu-
tionality of the act under which the commissioners
were elected, but based its right to relief chiefly upon
the ground that the proposed rates were unjust, un-
reasonable, and confiscatory.   The majority of the
court held that since the general power to fix rates
between points within the state belongs to the legis-
lature of each state, which may delegate the power
to a commission established for that purpose, that
"courts of equity will not interfere by injunction to
control the exercise of this power in advance."
While it was conceded in the opinion that the railway
commission could not confiscate the property of the
railroad company by the mere consideration of the
question mentioned in the notice, still if it could do
so, "the judiciary cannot control its actions in ad-
vance."   In reply to the argument that if relief by
injunction could not be given, the railroad company
would be subjected to a multiplicity of suits and
suffer irreparable damage, the court said that such
fact; "when compared with the necessity of maintain-
ing in all its integrity the proposition that the judi-
ciary will not seek to control legislative action in
advance, is dwarfed into insignificance."

The court held that the bill was prematurely
filed, but that the railroad company might, after the
schedule of rates had gone into effect, file a bill in
equity to enjoin the enforcing of rates, if they were
confiscatory, as claimed.   Perhaps the federal court
did not explicitly declare, as did our own court in the
State Assessor's case, that the judiciary is wholly
without jurisdiction in such a case as this.   But it
certainly declared that a court of equity would not
interfere in advance of action, and the principle of

the decision is·just as applicable to an action at law as to a suit in equity.

I am authorized to say that Chief Justice Steele concurs in the judgment of reversal for the reasons announced herein, and also for the reason that it is his opinion that the act in question is not violative of the constitution; and that Justices Goddard and Bailey dissent from the conclusion reached by the majority of the court upon the question of jurisdiction.

In view of the foregoing considerations, we hold that the district court ought not to have heard or determined this action on its merits, but should have entered an order of dismissal. Its judgment is, therefore, reversed and the cause remanded with instructions to the district court to vacate its former decree and enter a new one dismissing the action without prejudice.            *Reversed and remanded.*

Decision *en banc*.

CHIEF JUSTICE STEELE and JUSTICES GABBERT and MAXWELL concur.

JUSTICES GODDARD and BAILEY dissent.

JUSTICE HELM was not present at the hearing and took no part in the decision.