[No. 4069.]

The People, ex rel. Weisbrod v. Lockhard et al.

1.   Quo Warranto—*Leave of the Court Unnecessary,* when the district attorney has given his consent,(440)

2.   —— *Public Interest.* The proceeding has no place when the injury complained of is entirely private, and the interest of the public in no way involved.   (440)   ·

But that the relator seeks the redress of a private wrong, and that this is the main purpose, upon his part, in the institution of the proceeding, has not the effect to reject from consideration the interest of the public, apparent in the record.   Allegations that the defendants unlawfully assume to be and act as the directors of an irrigation district, never lawfully organized, that they have incurred large expenses, and are proposing to issue in the name of such supposed district, bonds to the amount of $200,000, and will sell them at a rate less than that prescribed by statute, sufficiently discloses the interest of the public.   (440, 441)

Each case must be determined . upon the particular facts thereof. (441, 445)

The mere fact that all other citizens of the district are opposed to what the relator desires does not conclusively negative the public interest.   *People v. Colorado, etc., Co.,* 8 Colo. Ap. 301; *State Railroad Commission v. Denver, etc., Co.,* 44 Colo. 345; *State v. Atcheson Co.,* 176 Mo., distinguished.   (444)

3.   —— *Relator, Who May Be.* The owner of land within the limits of an alleged irrigation district, subject to taxation for the expenses of the district, and for the payment of bonds which it may issue, may be the relator in *quo warranto* to question the legality of the district organization.   (452)

4.   —— *Parties—Defendants. Quo warranto* assailing the organization of a corporation, the supposed corporation is not a necessary party. (453)

*Error to Garfield District Court.* Hon. John T. Shumate, Judge.

Messrs. C. W. Darrow, John H. Voorhees for plaintiffs in error.

Messrs. L. E. Kenworthy, J. W. Dollison for defendants in error.

Morgan, J.

Proceeding in the Garfield District Court in the nature of *quo warranto* under chapter 28, section 320, to 329, Code Civ. Proc. Rev. St. 1908.   A general demurrer to the relator's complaint was sustained; he stood on his demurrer and judgment followed for the defendants.

The lower court decided that the action sought "to redress an alleged private injury, only, to the relator," and this is the principal question involved, along with the contention that he should have obtained leave of court to bring the action, and also that the act of May 3, 1905, concerning irrigation districts, secs. 3440 *et seq.* Rev. St. 1908, is unconstitutional. It is not necessary to consider the constitutionality of the act.

As to the right to commence the action without leave of court, when the district attorney refuses to act, and, *a fortiori*, when he gives his consent for the relator to act, as in this case, it is unnecessary to obtain leave of court. *People v. Regents*, 24 Colo. 175, 49 Pac. 286; *Canon City Club v. The People*, 21 Colo. App. 37, 121 Pac. 120.

As to the principal question, it is concluded that the relator's information or complaint was sufficient, although profuse in relating the private injury, and parsimonious as to the public. It has been directly held that an action of this kind cannot be brought to redress a private injury only, where the public is in no way involved. *People ex rel. U. P. R. R. Co. v. Colo. Eastern R. R. Co.*, 8 Colo. App. 301, 307, 46 Pac. 219; *State Railroad Com. v. The People ex rel., etc.*, 44 Colo. 345, 98 Pac. 7, 22 L. R. S. (N. S.) 810. Nevertheless, the facts alleged here disclose that a public question of considerable moment is involved, necessarily, and by the complaint, (voluminously), including the private rights of the relator. The complaint states that the three defendants, first named, are acting as directors of Divide Creek Irrigation District, and that no such district has been lawfully organized for reasons set forth in the complaint, all of which being admitted to be true, for the purpose of the demurrer, show that such district has not been lawfully organized as provided by the statute. The complaint also states that the other defendant is acting as secretary of said district, and that the defendants have incurred great expenses, and issued warrants to the amount of $11,585.98, and are about to issue and sell

bonds in the sum of $200,000, and that the same will be sold for much less than the act requires them to be sold for, and otherwise to exercise the franchise claimed by the defendants under and by virtue of said unlawful organization of the district.

It is not difficult to determine that the private injury which the relator complains of is his principal grievance, however this does not exclude the things of which the public may complain, and which are disclosed by the complaint. The line of demarkation is not plain and must be drawn in accordance with the facts in each particular case. The two cases above given holding that this kind of action cannot be brought to redress a private injury only, may seem to determine this question against the relator, but in one or two particulars, those cases are not the same as the present case. The mere fact that the relator expects a private wrong to be redressed as a result, does not exclude the interest the public has in the lawful organization of the district, and the exercise of the franchise, to be obtained thereby. It seems the public would be as clearly interested in seeing that an irrigation district, or individuals asserting the right to represent it, shall not usurp the powers given such districts, when lawfully organized, when it appears such district has not been so organized, as it has in seeing that an individual shall not usurp the power and authority given him, if lawfully elected to an office, when it appears he has not been so elected; and it is too well known to cite authority in the support thereof that *quo warranto* is the acknowledged remedy in the latter instance.

The act of May 3, 1905, as amended, now appears in the Rev. St. 1908, as follows, sec. 3440:

"Whenever a majority of the resident freeholders owning lands in any district desire to provide for the irrigation of the same they may propose the organiaztion of an irrigation district under the provisions of this act, and *when so organized* each district shall have the powers conferred or that may

hereafter be conferred by law upon such irrigation district" (italics ours).

The act then outlines the way in which such an organization may be formed, the method of its management, and defines the powers thereof; thereby conferring upon such district rights and powers similar in many respects to a municipal corporation less than a county, town or city, conferring upon it also certain public and *quasi*-public privileges greater than the rights and powers conferred by charter to an ordinary private or *quasi*-public corporation organized for private concerns. Such districts are given authority to own property such as water rights, ditches, reservoirs, etc., for irrigation purposes; to incur obligations, sue and be sued; to issue bonds for the purpose of constructing or purchasing such property, and providing that the real property in the district capable of irrigation may be assessed, and that the county commissioners shall levy a special tax thereupon, for the payment of the bonds and other expenses of the district. These rights and powers are great, and the exercise of such a franchise by such districts should not be permitted unless the law has been complied with in the formation and organization thereof. The opening section of the act provides that "when so organized each district shall have the powers," etc. It is not probable that any wholly disinterested person, or a person whose private rights have not or will not be disturbed, would take any action, or that the district attorney would do so, unless called upon by someone whose private rights would be affected by the exercise of the powers given to such district. Our courts have held that a relator in *quo warranto* proceedings *must have some* interest in the matter before he would be entitled to institute such proceedings. *People v. Grand River Bridge Co.*, 13 Colo. 11, 21 Pac. 898, 16 Am. St. 182.

The relator being the owner of land within the proposed district, capable of irrigation and subject to a levy of a tax for the payment of expenses and the bonds about to be sold, and being opposed to having his land so subjected, or un-

lawfully subjected, and desiring to attack the validity and
regularity of the organization and formation of the district,
as well as to enjoin the defendant from acting as directors
and thus incurring the expenses and selling the bonds, ought
to have some means in his own behalf of testing in court the
validity and regularity of such organiaztion and the conse-
quent exercise of the franchise by the defendants.  If he had
begun an ordinary suit in equity he could not in that kind of
an action attack the validity of the corporation, *Wason v.
Major,* 10 Colo. App. 181, 50 Pac. 741.  It seems therefore
that he should be permitted to avail himself of the remedy pro-
vided in the *quo warranto* statute, and suggested in the act
authorizing the formation of the district in section 3453
thereof, to the effect that if the "legality or regularity of the
formation or organization shall not have been questioned in a
*quo warranto* proceeding instituted in the district court    *
*   *   within one year,   *   *   *   shall be conclusively
deemed to be a legally and regularly organized district within
the meaning of this act."   Under this provision the query
arises—could any other proceeding be instituted to test the
validity and regularity?   And if answered in the negative,
would not this provision supplement the *quo warranto* stat-
ute, and supersede any ruling by the courts as to the right to
bring the proceeding to redress a private injury only, and
authorize a suit, in such instances, even if the main purpose
were to redress a private injury?   However, it seems unneces-
sary to apply such a strict construction, because it is more
reasonable to adopt the simpler conclusion that an inquiry
into the validity and regularity of such an organization would
necessarily involve more than the purpose of redressing a
private injury.   In this case, even if the relator's main pur-
pose, in bringing the suit, was to redress his own private
injury, it appears from the allegations in his petition that
the public would be interested in requiring the law to be com-
plied with in organizing a district of this character, although
it may not be directly and positively so alleged.   The powers

given to such a district are such that in the exercise of its
franchise it will deal with the public quite generally, not only
in incurring expenses of management and the purchase of
property, but in the floating of a bonded indebtedness offered
to the public; the interest of the public would be subserved by
having the organization judicially declared to be valid and
regular, whereby no franchise would be usurped which the
public has, by statute, conferred upon such district. Or, if
the organization be declared to be invalid, it may be cured or
corrected by supplying or correcting the defects thereof.
These irrigation districts have been judicially declared to be
public corporations, *McCord Merc. Co. v. McIntyre*, 25 Colo.
App. 276, 138 Pac. 59, 60; *Anderson v. Grand Valley Ir.
Dist.*, 35 Colo. 525, 534, 85 Pac. 313, and whether public,
*quasi*-public, or municipal, the public is interested in the law-
ful organization thereof. The assertion of the right, and the
exercise thereof, by individuals acting as directors of irri-
gation districts, to use the public franchise so granted, when
the district has not been lawfully and regularly organized,
is in the nature of a violation of a public law, and any in-
terested citizen ought to have the same right to a *quo war-
ranto* proceeding to inquire into the authority of such indi-
viduals to act as if they had usurped, or intruded into. a
public office.

The right of a relator to institute *quo warranto* proceed-
ings seems to be hedged in on both sides by the decisions—
he must have some interest, such as a taxpayer or property
owner, in the municipality or district, more than an ordinary
citizen, and, on the other side, his interest should not be such
that the only purpose and result of the proceeedings is to re-
dress a private injury.

The mere fact that all other citizens in the district are
in favor of its continuation and of the current management
and sale of the bonds, etc., does not necessarily and conclu-
sively show that the public is not interested, or that even they

would not be benefited by a judicial sanction, as to the validity of the organization, or *vice versa*.

Counsel for the defendants rely upon but three cases to support their contention that the action was brought for the sole purpose of redressing a private injury, to-wit: *People ex. rel. U. P. Ry. Co. v. Colo. Eastern Ry. Co.*, 8 Colo. App. 301, 46 Pac. 219; *State Railroad Com. v. D. & R. G. R. R. Co. et al.*, 44 Colo. 345, 98 Pac. 7, 22 L. R. A. (N. S.) 810; *State ex. inf. Crow v. A. T. & S. F. Ry. Co.*, 176 Mo. 687, 75 S. W. 776, 63 L. R. A. 761.

From an examination of these cases, and some others of like nature, it may be concluded, so far as the exact question involved in the present case is concerned, that each case must be determined upon the particular facts thereof, and that no hard and fast rule can be adopted that will fit every case.

In the first of the above cases, the fourth syllabus is as follows: "It is held under the facts and circumstances of this case," etc. In the second case, the courts said: "Our conclusion is that this is not a proper case for the prosecution of a proceeding in the nature of *quo warranto*." In the third case the court said we do not "think the information shows such a state of facts as would from any standpoint of view authorize the issuance of the writ of ouster."

Thus it appears that the facts of each particular case must determine the question as to whether the action is brought to redress a private injury or protect a private right, as contradistinguished from a public right.

Having determined that every case must rest upon the facts involved, for a determination of this question, the facts and circumstances of the three cases aforesaid will now be examined and compared with the facts in the present case.

In the first case, aforesaid, one railroad company endeavored to oust, by *quo warranto*, another from the exercise of its corporate powers, simply because it was seeking to condemn lands belonging to the relator; and attacking the corporate existence of the respondent on the ground that it had

not complied with a statute requiring that "within two years from the record of its articles it should begin the construction of its road, and expend thereon twenty per cent of its capital stock within five years," or forfeit its corporate organization. Not thereby attacking the validity of its organization, but the validity of its acts thereafter, and seeking to do by *quo warranto* what could and ought to be done by a suit in equity, or in the very condemnation suit which was then pending. The court in that case said that the thing complained of is the condemnation of lands, and "There is no other one act or thing charged which can be said to constitute an absolute wrong which calls for redress." Therefore, no harm whatever could come to the people by reason of any charge made by the relator in that case. The court further said in referring to the purpose of the proceeding in that case: "It is without a solitary public feature, and must be taken to be purely a private suit, brought by private parties to accomplish their private ends." No public corporation, municipal in character, was involved. Both the relator, railroad, and the respondent railroad, were private, or possibly *quasi-public*, corporations, both lawfully organized, and no usurpation charged that directly affected the public.

Now, comparing that case with the present case: It is charged by the relator in the present case that the three defendants, Lockard, Fain and Hover are, falsely and fraudulently and without right, power or authority so to do, claiming to be, and are acting as, directors of said district, the other defendant as secretary, and have falsely and fraudulently usurped the powers, authority and franchises of directors, and have so intruded themselves into office as directors, when such district had not been legally and regularly organized (for reasons given), and that they have not been legally elected or chosen for such offices. In the present case the defendants are charged with usurping the franchise, and the powers under it, of a public corporation permitted to be organized for a public purpose, that of reclaiming arid lands,

and given taxing powers, the same as school district, whereby the lands, capable of irrigation in the district, may be publicly taxed and the taxes levied and collected by the county authorities, the same as towns and cities and school districts. The defendants could act as they are charged, if there were no usurpation or intrusion, but, if they have wholly failed to comply with the law in forming and organizing the district, then there is a usurpation and an intrusion, and the private rights of the relator is not the thing usurped, or intruded into, but the rights of the public, in seeing and knowing that the law has been complied with, and that the alleged acts of defendants will not be unlawful, that the warrants and bonds they issue will not be invalid, and that the lands within the district will not be unlawfully taxed, and for a purpose not intended by the act. It seems to be successfully charged that the lands located in the proposed district, and the irrigation thereof, so proposed, do not come within the provisions of the act, and that, if the law is strictly followed, no district can be formed in such locality, or organized, for the purposes for which the act was designed, and that the facts and conditions there existing do not warrant or call for such a district. These issues should be contested on the merits.

In the *Railroad Commission* case, the Supreme Court took another step toward limiting the scope of the *quo warranto* act, by following the *Colorado Eastern* case, and applying the law, applied in that case, between two railroad companies in condemnation of the land of one of them, to a state of facts, that existed in the *Railroad Commission* case, concerning the necessarily following future acts of a public board created by statute to regulate common carriers. The court in the latter case was on debatable ground, as shown by the opinion, but held that the relators, railroad companies, could not use the people's name in *quo warranto* proceedings to redress their own private and, as it appears, future injuries. That case is not controlling here because of the distinction made in the opinion, wherein the court said, the re-

lators "make no claim that if the act is valid the individual respondents are not legal incumbents of the office." No charge was made that there was any defect in their appointment, while that is the very invalidity charged in the present case—the defect in the proceedings under the act, whereby the defendants, in the present case, assume to act as directors; not only defects in their election as directors, but defects in the organization of the district providing for such election. The greater and clearer distinction, however, arises in·considering the injury to be redressed, whether wholly private or involving the public interest also, under the facts, circumstances and conditions of each case. It is held in that case that the regulation of the respondent railroad was a matter in which the public had no interest, or would have none when such regulation was attempted or effected, and the opinion lays great stress upon the fact that no attempt had then been made by the commission, and that the complaint of the relators, was wholly anticipatory. The powers given the commission in regulating common carriers, could, in the view of the court, in no way affect the public as a whole, but only the private rights of the carriers. In the present case the powers given the irrigation district affect every citizen who owns lands capable of irrigation within its limits, and within the limits of its powers, and affects the rights of that portion of the public included therein. Furthermore, the general public is interested in having such districts organized for the purpose of reclaiming arid lands, and not for private purposes. Also in seeing that such reclamation, under the act, is lawfully effected, so that the law may not be violated, and so that the lands may not be unlawfully taxed, and so that the warrants and bonds may be lawfully issued, and thereby sell for their full value by reason of their validity. The act itself provides a method·of procedure by which the district itself may have the issue of bonds judicially declared to be legal and valid to this end. *Anderson v. Gr. Val. Ir. Dist., supra.* It is further provided that *quo warranto* must be brought within one

year, and if not, the legality of the organization cannot there-
after be questioned. These provisions of the act place pro-
ceedings by *quo warranto,* as in the present case, in a class dis-
tinct and separate from such a proceeding as in the *Railroad
Commission* case.

The third case aforesaid, *State ex rel. Crow v. A. T. &
S. F. R. Co.,* in which the question is voluminously discussed
by counsel and the court, the purpose of the action by the At-
torney General, Crow, was declared to be wholly to redress a
private injury to shippers caused by certain switching charges
made by the railroads. The injury in that case was a matter
wholly between the shippers and the railroads, and the court
held the determination of their rights should be had in an ac-
tion between themselves, and not in the name of or by the
people. It is similar to the *Colorado Eastern* case, *supra,* but
not controlling here.

On the other hand, it may be concluded from principle
and authority that in this particular instance, the purpose of
the *quo warranto* proceeding was not wholly to redress a
private injury, as held by the lower court.

Spelling on Injunctions and Ex. Rem., volume 2, sec.
1773 (2nd Ed.), says, in regard to the interest of the public
in *quo warranto* proceedings:

"That feature adheres to it in all cases, even where the
interest of the relator seems to outweigh any public interest
in the question at issue, as where it is resorted to to test the
title to an office between two claimants; for, while the public
may not have any interest in the question whether A or B
shall perform the duties and enjoy the emoluments of a
public office, still it has an interest that neither A nor B shall
usurp a public office. And the same reasoning applies where
title to an office in a private corporation is in dispute, since
such controversy usually involves the further question of
whether a corporate franchise has or has not been usurped."

So, in the present case the public may not be interested
in the relator's private injury, or whether the defendants or

others, act as directors of this district, but it is interested that they shall not usurp the right to act in the absence of a lawfully organized district.

High on Ex. Leg. Rem., sec. 619 (3rd Ed.), says:

"When the right to an office or franchise is the sole point in controversy, the specific legal remedy, afforded by proceedings in *quo warranto*, is held to oust all equitable jurisdiction of the case. Thus, the legality of the election of trustees of an incorporated association, and their consequent right to exercise the functions pertaining to their office, and to conduct the affairs of the corporation, will not be determined by bill in chancery, such a case being regarded as appropriately falling within the jurisdiction of the common-law courts by proceedings in *quo warranto*. And since this remedy is applicable the moment an office or franchise is usurped, an injunction will not lie to prevent the usurpation, even though the respondent has not yet entered upon the office or assumed to exercise its functions. In such case the party aggrieved should wait until an actual usurpation has occurred and then seek his remedy in *quo warranto*."

While the complaint of the relator in this case is based quite generally upon the injury the relator alleges will occur to him individually, much of which might have been omitted, yet there is enough therein to disclose that the franchise was not obtained, as the act provides, and is therefore unlawfully exercised by the defendant, directors; and to disclose, also, that they were not legally elected. And it appears that the sole legal questions involved are the lawful existence of the district, and the consequent right to the franchise which includes the right to exercise the functions of directors.

It is further stated in sec. 684, that:

"The creation of corporate franchises being an attribute of sovereignty to be exercised only by the supreme power in the state, all who presume to exercise such franchises without due authority are liable to proceedings by information in the

nature of. a *quo warranto*.  And when it is sought to exercise
the privileges and powers of a municipal corporation without
authority of law, an information is the proper remedy, and
the courts will give judgment that the pretended corporation
be dissolved.  So under a statute authorizing the filing of an
information against any person unlawfully holding or exer-
cising any public office or franchise, or when any persons act
as a corporation without being authorized by law, an infor-
mation will lie, and judgment of ouster may be rendered
against persons claiming to exercise the functions of officers
of a municipal corporation which has no legal existence.  And
it is the appropriate remedy against directors of a school dis-
trict to test the legality of its organization.  So it may be
used to determine the right of respondents to exercise' the
franchises of a school district and to act as officers of such
district."

The unlawful use or the abuse of a corporate franchise
by directors of an irrigation district is a public rather than a
private wrong, even though the private injury be the thing
principally complained of, or that impels relator to move.  Mr.
High says, and so say all the authorities, that the relator must
have some private grievance, sec. 700, id.

It is stated in 32 Cyc. 1415, that:

"In the absence of statutory provision to the contrary,
*quo warranto* proceedings are held to be the only proper rem-
edy in cases in which they are available.  Thus they are held
to be the exclusive method of questioning the legality of the
organization or a change in the territory of a *quasi*-public
corporation, such as a school district or a drainage district,
or of determining the right to hold and exercise a judicial
or other public office, or to enforce the forfeiture of a cor-
porate franchise, to attack the validity of the organization of
a corporation, or to try title to an office therein; and when
the remedy by *quo warranto* is available, it is held that there

is no concurrent remedy in equity unless by virtue of statutory provision."

It is further stated on page 1443, that:

"The general rule is that where the remedy is sought for a public wrong, proceedings should be instituted by and upon the relation of the attorney general; but where the primary purpose is to redress a private injury, the person aggrieved may appear as relator in the information. In a number of cases the rule has been broadly stated that the writ of *quo warranto* does not lie at the suit of a private person, but this rule must be taken to be limited to proceedings of the character under consideration by the court at the time of stating it."

And on page 1424:

"*Quo warranto* is the proper and in the absence of statute the exclusive proceeding to determine the question of the legal existence or validity of the organization of a municipal corporation, such as a city or village, a township, or a school district; and in such proceedings it may be shown that the incorporation is void because of fraud in securing the charter or in the organization of the municipality."

Again on page 1462:

"In an action against an individual for exercising unlawfully an office in a municipality, not only the question of the legal existence of the office, but that of the corporation itself, may be tried and decided."

Hence it seems the relator has no other remedy, and, that he has a right, that has been and will be further invaded, is undisputed. In fact the main point urged against him is that it is his private right alone that has been invaded, and that no public right or interest is involved.

In the case of *Renwick v. Hall,* 84 Ill. 162, 164, the court dismissed a bill in equity, and held that a *quo warranto* proceeding was the proper remedy by owners of lands within

a proposed school district who attacked the legality of its organization. The court said through Justice Dickey:

"We find no grounds in this bill upon which to found jurisdiction in a court of equity. The objections presented to the regularity of the proceedings called in question are merely technical. If these objections be fatal, there is a complete remedy at law. .

"By our statute, an information in the nature of a *quo warranto* will lie where 'any association or number of persons shall act within this state as a *corporation* without being *legally* incorporated.' If it be true, as alleged in this bill, that a new district has never been created under the law, in such case the legal existence of this *quasi* corporation can be tested and its illegality established by proceedings under this statute."

While the provision of the Illinois statute is not exactly the same as ours, it seems that the rights given under our *quo warranto* statute are equally as broad.

It may seem that, as the legality of the district is charged, the district itself should have been the defendant, but Mr. High says, sec. 709a:

"Upon an information to determine the legality of the existence of a municipal corporation, the information charging that it was illegally organized, it is unnecessary to make the corporation itself a respondent, since the corporate existence is denied. In such case the persons who assume to act as officers, or to exercise the franchise of the supposed municipality, are the only necessary respondents to determine the validity of the incorporation."

The judgment is therefore reversed with the privilege to relator to amend as he may be advised.